In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3972

Terry Logan,

Plaintiff-Appellant,

v.

Caterpillar, Inc., Rita Knapp, David Wendling,
Eric Rueschhoff, and Wendy Watta f/k/a Vosberg,

Defendants-Appellees.


Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 6391--Charles P. Kocoras, Judge.


Argued October 26, 2000--Decided April 4, 2001


  Before Easterbrook, Kanne, and Evans, Circuit Judges.

  Kanne, Circuit Judge. Caterpillar employee Terry
Logan attempted to salvage a romantic
relationship with co-worker Wendy Watta, formerly
known as Wendy Vosberg. Instead of
reconciliation, Logan's attempts to convince
Watta to continue their relationship resulted in
the loss of his job, the issuance of a
restraining order, an indictment for residential
burglary, and his arrest for criminal trespass.
Logan brought suit against Caterpillar, Inc.,
Rita Knapp, a Caterpillar security officer, David
Wendling, a Caterpillar security manager, Eric
Rueschhoff, and Wendy Watta alleging sex
discrimination and various counts of malicious
prosecution. The district court granted summary
judgment for the defendants on all counts. On
appeal, Logan challenges the district court's
determinations that: (1) he failed to make a
prima facie showing of sex discrimination because
he did not show that a similarly situated female
was treated more favorably; (2) he provided no
evidence that Caterpillar's articulated reason
for firing him was pretextual; and (3) the
defendants did not initiate criminal proceedings
against Logan such as would support a claim for
malicious prosecution. We affirm.

I.  History

This case arises out of the turbulent break up of two employees of Caterpillar's Aurora facility: Wendy Watta and Terry Logan. Watta asserts that she started to break off her nearly two year relationship with Logan in early 1997, but admits that she continued to see him sporadically throughout April and May. On May 30, 1997, Watta began dating Eric Rueschhoff, a Caterpillar employee who works at the Peoria facility. Many of the events surrounding Logan and Watta's break-up are disputed, but it is clear that their personal problems eventually seeped into the workplace.

On July 9, 1997, Bill Arbogast, the personnel manager for Caterpillar's Aurora facility, received an e-mail from Watta asking if she could meet with him regarding an employee that would not stop bothering her. Watta stated that she was concerned for her physical safety. At noon the following day, Watta met with Arbogast and informed him that the employee was bothering her at home and at work despite her continued requests to leave her alone. She said that she was installing an alarm system in her house because of the employee's harassment and that she was staying with friends until the alarm system was ready. Watta did not, however, reveal the identity of the offending employee.

Arbogast followed up on his meeting with Watta by asking Sandra Rossell, a consultant with Caterpillar's Employee Assistance Program, if she knew of any employee who might be bothering Watta. Rossell correctly suspected that the alleged harasser was Logan, a manufacturing project specialist whom she had been counseling for several weeks regarding his break-up with Watta. Rossell contacted Logan and explained that Watta had made a complaint against him without mentioning his name. Later that day, Logan approached Arbogast in his office and stated that he was "very frightened" about a personal matter. He explained that his relationship with Watta had recently ended and that he was receiving counseling to help him get through the break-up. According to Logan, Arbogast answered by telling him that he needed to keep his business life separate from his personal life.

Less than a week later, on July 14, 1997, Rita Knapp, a security officer at Caterpillar's Peoria facility, received a call from Detective James Pierceall of the Woodford County Sheriff's department. Pierceall stated that he had met with Caterpillar employee Eric Rueschhoff that morning regarding a series of threatening phone calls made to Rueschhoff's house. Rueschhoff explained that he suspected that the caller was Terry Logan because of Logan's prior relationship with Wendy

Watta, now Rueschhoff's girlfriend. Rueschhoff also told Pierceall that he believed that Logan broke into his house because an address book and a greeting card that were taken from his house sometime during the weekend of June 20 later showed up in Watta's mailbox. These items were accompanied by an anonymous letter to Watta. The letter-writer, purporting to be a female Caterpillar employee, stated that she had overheard Rueschhoff making disparaging comments about Watta and wanted to warn her about him. Pierceall also informed Knapp that Watta had filed an internal complaint with Caterpillar against Logan. In response to this information, Knapp contacted the Aurora facility security manager, David Wendling, and confirmed that Watta had lodged a complaint about Logan's behavior.

Approximately one week later, on July 22, 1997, Caterpillar security officer Leon Mills received a phone call from Officer Stacy Friddle of the Yorkville police department asking how to get in touch with Watta. Officer Friddle explained that the Yorkville police were called to Watta's residence at 2:00 a.m. because her security alarm went off. The police determined that a cat probably set off the alarm, but while speaking with Watta regarding the incident, the officers learned that Watta installed the alarm system because of problems with a co-worker named Terry Logan. When Watta told the officers that she would be in Oklahoma for the next few days on a business trip, they agreed to keep an eye on Watta's house. Several hours later, at 4:40 a.m., Officer Friddle noticed Logan pull into Watta's driveway, open the garage door, and drive into the garage. She confronted a nervous Logan and asked him if he had permission to be there. Logan said that he often checked on Watta's house while she was away, yet he acted very strangely when asked whether Watta would agree that she had authorized him to be there. Logan claimed that he was checking the garage for flammables, but did not reply when asked specifically what he was looking for. In response to Friddle's questioning Logan became frightened and began dry heaving in the corner of the garage. Eventually, after determining that Logan did not know about the security system and did not have a key to the house, the officers took his picture and allowed him to leave.

After Officer Friddle recounted the morning's events, Mills relayed the information to Wendling, Knapp, and Logan's supervisor, Joe Porter. Knapp contacted Watta in Tulsa and told her that the police had apprehended Logan in her garage that morning. During their conversation, Watta confided in Knapp that she had been having problems with Logan for some time and stated that

she had instructed him not to contact her in any way. Knapp responded that she would like to meet with Watta to discuss the situation, and Watta agreed. On July 25, 1997, Knapp, Watta, Rueschhoff, and Detective Pierceall met at the Peoria Sheriff's office to discuss Watta's problems with Logan.

After hearing Watta's account of the situation, Knapp arranged to meet with Logan and Wendling in Wendling's office at Caterpillar's Aurora facility on August 5. At this meeting, Knapp identified herself as a Caterpillar security officer and proceeded to question Logan about his relationship with Watta. Several times during the meeting, Logan became very emotional. He repeatedly told Knapp that he had "done some really dumb . . . things lately" and that he was not proud of the things he had done. After the meeting, Knapp and Wendling both prepared reports of their conversation with Logan. Both of these reports reflect that Logan admitted to: (1) using the company e-mail system for personal use; (2) breaking into Rueschhoff's house through an unlocked side window; (3) making approximately thirty harassing phone calls to Rueschhoff's residence; (4) mailing the card stolen from Rueschhoff's house to Watta; and (5) fabricating a letter to Watta from a female Caterpillar employee in an attempt to discredit Rueschhoff. Logan also admitted contacting Watta on July 29 and August 1 in contravention of Arbogast's directive to leave Watta alone.

At some point during the meeting with Knapp and Wendling, Logan informed them that he takes the prescription drug Ritalin several times a day because he has Attention Deficit Disorder. Logan claims that he asked Knapp and Wendling for permission to take his medication during the meeting and they refused. Knapp and Wendling deny this; they claim that Logan informed them at the end of the meeting that he had not taken his medicine for several hours and proceeded to remove a bottle from his pocket and take a pill. At the conclusion of the interview, Knapp and Wendling escorted Logan to the Caterpillar medical office where Logan met with Sandra Rossell. Following this meeting, Logan agreed to voluntarily admit himself to the psychiatric unit at Mercy Hospital.

Logan now states that he can not remember making any of the above admissions to Knapp and Wendling. Logan does not deny making the admissions; rather, he claims that he was suffering from Ritalin withdrawal and thus was incompetent to discuss the events surrounding his break-up with Watta. Logan claims that Knapp and Wendling were aware that his admissions were

inherently unreliable because they denied his request to take the Ritalin. He also claims that his admission to a psychiatric hospital shortly after his meeting with Knapp and Wendling is further evidence of the unreliability of his admissions.

After reviewing Knapp's report of the Logan interview, the Yorkville police report, and Watta's statement to the police regarding the trespass to her garage, Porter decided to fire Logan. On August 13, 1997, Porter informed Logan that his employment was being terminated because he: (1) abused the company e-mail system; (2) failed to obey Arbogast's directive not to contact Watta; and (3) harassed Caterpillar employees Watta and Rueschhoff. Watta and Rueschhoff were also disciplined for abusing the company e-mail system; they were each suspended for five days without pay.

In addition to the termination of his employment with Caterpillar, the events surrounding Logan's break-up with Watta also resulted in criminal charges against Logan for criminal trespass, residential burglary, and witness harassment. The criminal trespass charge arose out of Logan's early morning visit to Watta's garage on July 22, 1997. Watta signed a criminal complaint against Logan after being encouraged to do so by Lieutenant Harold Martin of the Yorkville Police Department. At the same time, Watta signed a petition for a restraining order against Logan. An interim order of protection was entered on August 11, 1997; it was expanded to a Plenary Order of Protection on September 3, 1997. The State's Attorney dismissed the criminal trespass charge on September 9, 1998 pursuant to a motion nolle prosequi. At the same time, Logan voluntarily entered into a new protective order in exchange for the State's Attorney's promise not to prosecute Logan for any of the alleged violations of the protective order up to that point. The expanded protective order provided that Logan was not to contact Watta or Rueschhoff personally or by telephone and prohibited him from entering Yorkville or Peoria without consent of the court. On October 9, the Kendall County State's Attorney filed an information charging Logan with harassment of a witness. This charge arose after Watta complained to the Yorkville Police Department that she received telephone calls from Logan on October 1 and 2, 1997 in violation of the September 3, 1997 protective order. On November 13, 1997, the State's Attorney dismissed the witness harassment charge without prejudice.

The final charge filed against Logan stemmed from his alleged burglary of Rueschhoff's house.

In conjunction with the investigation into the burglary, the Woodford County State's Attorney subpoenaed Knapp's report of Caterpillar's investigation into Logan's actions. A jury acquitted Logan of this charge on August 24, 1998.

Following the jury verdict in his favor and the dismissal of the other charges, Logan filed suit in federal court against Caterpillar alleging that he was discriminated against on the basis of sex in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. sec.sec. 2000e et seq. Logan also claims that all of the defendants subjected him to malicious prosecution by filing charges against him for criminal trespass, witness harassment, and residential burglary. The district court granted summary judgment for Caterpillar on the sex discrimination claim finding that Logan failed to make out a prima facie case. The district judge also granted summary judgment for all defendants on Logan's malicious prosecution claims because he found that Logan did not show that the defendants initiated criminal proceedings against him.

II.  Analysis
A.   Logan's Claim of
Sex Discrimination Under Title VII

Logan claims that Caterpillar unlawfully discharged him because of his sex in violation of Title VII. 42 U.S.C. sec. 2000e et seq. Because Logan has provided no direct evidence of sex discrimination, he must proceed under the burden-shifting approach articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Under the McDonnell-Douglas approach, Logan must first establish that: (1) he is a member of a protected class; (2) he was meeting his employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated females. See Simpson v. Borg-Warner Co., 196 F.3d 873, 876 (7th Cir. 1999). If Logan can successfully show each of these elements, a rebuttable presumption of discrimination is created and the burden of production shifts to the defendants to present evidence of a legitimate, non-discriminatory reason for Logan's dismissal. See id. Evidence of a non-invidious reason for the termination will then shift the burden back to Logan to show that the articulated reason is actually a pretext for discrimination. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993); Simpson, 196 F.3d at 876.

The district court found that Logan was unable

to establish a prima facie case of sex discrimination because he could not show that he was treated less favorably than any similarly situated female employee. We review the district court's grant of summary judgment de novo, viewing the facts and drawing all reasonable inferences in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

We find that the district court correctly determined that Logan did not establish that he was treated more harshly than a similarly situated female employee. Logan contends that Caterpillar did treat a similarly situated female--Watta--more favorably. This argument is clearly without merit. Caterpillar gave three reasons for Logan's dismissal: (1) his abuse of the company e-mail system; (2) his failure to obey Arbogast's directive not to contact Watta; and (3) his harassment of Caterpillar employees Watta and Rueschhoff. The fact that Watta was guilty of one of these infractions--abuse of the e-mail system--does not render her similarly situated to Logan. Logan urges us not to consider Caterpillar's second reason because there is an issue of fact as to whether Arbogast instructed him to stay away from Watta or merely to keep his work life separate from his personal life. We need not address this argument because it is clear that Watta and Logan were not similarly situated with respect to Caterpillar's third reason for firing Logan--his harassment of fellow employees. Logan argues that Watta was also a harasser; he claims that she harassed him by falsely reporting the incidents in question. Even if correct, this would not show that Watta and Logan were similarly situated for the purposes of a prima facie case of sex discrimination. If we were to put aside Watta's reports to Arbogast and Knapp, it is still undisputed that Caterpillar received telephone calls from two different police officers reporting incidents of harassment. It received no similar reports with regard to Watta. Thus, we agree with the district court that Logan has failed to show that he was treated less favorably than any similarly situated female employee.

Even if Logan had established a prima facie case of sex discrimination, Caterpillar has met its burden to demonstrate a legitimate non-discriminatory reason for Logan's termination.

Caterpillar made the decision to fire Logan only after it had gathered substantial evidence that Logan had violated company policy and engaged in criminal activity. Much of the evidence that Caterpillar relied on came directly from Logan's interview with Knapp and Wendling. Because Caterpillar has articulated a legitimate non-discriminatory reason for terminating Logan, the burden shifts back to Logan to show that Caterpillar's purported reason is pretextual. Jackson v. E.J. Brach Corp., 176 F.3d 971, 983 (7th Cir. 1999). In this context, pretext is defined as "a lie, specifically a phony reason for some action." See Russell v. Acme-Evans Co., 51 F.3d 64, 68 (7th Cir. 1995).

Pretext may be established directly by showing that the employer "was more likely than not motivated by a discriminatory reason," or indirectly by presenting evidence that the "employer's explanation is not credible." Jackson 176 F.3d at 984 (citations omitted). If a plaintiff does not have direct evidence of pretext, he may show pretext indirectly by presenting evidence that (1) defendant's explanation for the adverse job action had no basis in fact; (2) the explanation was not the "real" reason for the adverse job action; or (3) the reason given was insufficient to warrant the adverse job action. See Bahl v. Royal Indem. Co., 115 F.3d 1283, 1291 (7th Cir. 1997) (citations omitted).

Logan attempts to establish pretext by showing that Caterpillar security personnel took a "less than neutral" approach to their investigation of him in which they accepted evidence against Logan at face value while ignoring contrary evidence. He claims that Knapp and Wendling should have know that his admissions were less than reliable and that they should have conducted a more thorough investigation into the actions surrounding his termination. Logan ignores the fact that, in determining whether Caterpillar's stated reasons for Logan's dismissal are pretextual, our task is not to second guess Caterpillar's investigative process, but only to decide whether he was discharged for a discriminatory reason. See Giannopoulos v. Brach & Brock Confections Inc., 109 F.3d 406, 410 (7th Cir. 1997) (citations omitted). "[W]hen an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." Id. at 411.

Caterpillar gave three reasons for terminating Logan; he disputes two of them--contacting Watta

contrary to Arbogast's directive and harassing Watta and Rueschhoff. In order to show pretext, however, "[i]t is not enough for the plaintiff to simply assert that the acts for which [ ]he was terminated did not occur." Billups v. Methodist Hosp. of Chi., 922 F.2d 1300, 1304 (7th Cir. 1991). He must provide some evidence that the employer did not honestly believe the reasons given for his discharge. See Debs v. Northeastern Ill. Univ., 153 F.3d 390, 396 (7th Cir. 1998). Logan has provided no such evidence. To the contrary, much of the information that Caterpillar relied on in making its determination was provided by Logan himself. Logan's claim that he falsely confessed to improper behavior does not support a finding of pretext without corresponding evidence that Caterpillar knew that Logan's admissions were untrue. Prior to Knapp and Wendling's interview of Logan, Caterpillar possessed reports of Logan's harassment from Detective Pierceall, Officer Friddle, and Watta herself. Nearly everything that Logan said in his interview fit squarely with the information that Caterpillar already possessed. Even if Logan falsely admitted to harassing Watta and Rueschhoff as a result of Ritalin withdrawal, he has shown no evidence that Caterpillar had reason to know that Ritalin withdrawal could produce this effect. Therefore, we agree with the district court's finding that Logan has not shown sufficient evidence of pretext to survive a summary judgment motion.

B.  Logan's Claim of
Malicious Prosecution Under Illinois Law

   Logan brings separate state law claims against the Caterpillar defendants (Caterpillar, Knapp, Wendling, and Rueschhoff) and Watta for subjecting him to malicious prosecution for: (1) criminal trespass to Watta's residence; (2) harassment of a witness arising out of his alleged violations of a protective order; and (3) residential burglary of Rueschhoff's home. Logan bases his claims against the Caterpillar defendants on their role in providing information about his activities to the police. His claims against Watta arise from his contention that Watta provided the police with false information on several occasions and signed a criminal complaint against him for criminal trespass.

   At the outset, we note that malicious prosecution suits are disfavored by law because of the potential deterrent effect on the reporting of crime. See Joiner v. Benton Cmty. Bank, 411 N.E.2d 229, 231 (Ill. 1980). Thus, in order to prevail on any of these claims under Illinois law, a plaintiff must show the following: (1) the commencement or continuance of

an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages. See Swick v. Liautaud, 662 N.E.2d 1238, 1242 (Ill. 1996). All of these elements must be present; the absence of even one element will preclude recovery for malicious prosecution. See Washington v. Summerville, 127 F.3d 552, 557 (7th Cir. 1997). The district court found that Logan had not established that any of the defendants commenced or continued a criminal proceeding against him, and therefore granted summary judgment for all the defendants on this basis. We will address the claims against the Caterpillar defendants and Watta separately.

1. Malicious Prosecution Claims
Against Caterpillar

We agree with the district court's finding that Logan has failed to show that the Caterpillar defendants commenced or continued criminal proceedings against him. Our review of the record makes clear that Logan has not alleged sufficient facts to attribute legal causation of any of the charges filed against him to any of the Caterpillar defendants. In Illinois, criminal proceedings are commenced by the filing of a complaint, an indictment, or an information. See 725 Ill. Comp. Stat. Ann. 5/111-1 (West 1996). Illinois law requires that, in order to commence or continue a criminal proceeding, the defendant must have initiated the criminal proceeding or "his participation in it must have been of so active and positive a character as to amount to advice and cooperation." Denton v. Allstate Ins. Co., 504 N.E.2d 756, 760 (Ill. App. Ct. 1987). Thus, a private citizen does not commence a criminal action merely by reporting information to the police--even if the information later turns out to be incorrect. See Randall v. Lemke, 726 N.E.2d 183, 185 (Ill. App. Ct. 2000). Legal causation will be attributed to a private citizen only if the plaintiff can demonstrate that the defendant (1) instituted the proceedings against the plaintiff; (2) knowingly made false statements to the police; or (3) requested, directed, or pressured the officer into swearing out the complaint for the plaintiff's arrest. See Geisberger v. Vella, 379 N.E.2d 947, 949 (Ill. App. Ct. 1978). Normally, a private citizen institutes a criminal judicial proceeding by filing a complaint. See Schwartz v. Coulter, No. 91-C7954, 1993 WL 398578 at *8 (N.D. Ill. Oct. 6, 1993). It is undisputed that the Caterpillar defendants did not file a complaint against Logan, nor are they alleged to have knowingly provided false information to the police or

pressured any officer into swearing out a complaint for his arrest. Instead, Logan attempts to show that the Caterpillar defendants commenced criminal proceedings against him by failing to turn over potentially exculpatory evidence to the police.

Plaintiff relies on Carbaugh v. Peat, 189 N.E.2d 14 (Ill. App. Ct. 1963), for his argument that withholding exculpatory evidence is sufficient to commence or continue a criminal proceeding for the purposes of a malicious prosecution claim. His reliance, however, is misplaced. The Caterpillar defendants, unlike the defendant in Carbaugh, never filed a criminal complaint against the plaintiff. In Geisberger, the court distinguished Carbaugh on this basis and held that defendants who did not file a complaint but knew that the police had arrested the wrong man did not have an affirmative duty to correct errors made by the police. Geisberger, 379 N.E.2d at 949. Similarly, in Denton, the court rejected the plaintiff's contention that one who provides information to legal authorities is always under an affirmative obligation to report subsequent findings that cast doubt on the original information. 504 N.E.2d at 761. In Denton, the police called an agent of Allstate Insurance Company to inquire about a stolen vehicle claim made by Denton. Id. at 759. The insurance agent replied that the situation "sounded like a fraud" and stated that Allstate would delay payment on the claim. Id. Based partially on this information, the officer obtained a warrant for Denton's arrest. Id. Subsequently, however, Allstate paid Denton's disputed claim in full but did not provide this information to the police. Id. The court refused to find that Allstate had initiated a criminal proceeding against Denton by failing to inform the police about the settlement of the claim. Id. at 760. Importantly, the court noted that the police were already suspicious before they spoke with the defendant and there was no evidence that the defendant knew that the information provided was false. Id. at 761.

Logan claims that the Caterpillar defendants withheld exculpatory evidence because the Caterpillar security report that was turned over to the police omitted critical information, most notably the fact that his confession was unreliable due to Ritalin withdrawal. He claims that the information provided to the police failed to include: (1) information that would undermine Watta's credibility; (2) Caterpillar gate records that established an alibi for the Rueschhoff break-in; and (3) an e-mail written by Watta giving Logan the alarm code to her house. We need not examine Logan's claim that this

evidence is potentially exculpatory because Logan has presented no evidence that the Caterpillar defendants knowingly withheld this information. The police and prosecutors had ample opportunity to ascertain Watta's credibility for themselves. Logan does not claim that Caterpillar was in sole possession of any information casting doubt on Watta's credibility. With respect to Caterpillar's gate records, even if we set aside the substantial question of whether they actually provide Logan with an alibi for the Rueschhoff break-in, Logan has not set forth any evidence showing that the individuals conducting the security investigation knew that the gate records provided Logan with an alibi. We are not convinced by Logan's sweeping allegations that the Caterpillar defendants conspired to prosecute Logan by selectively deciding which information to release to the police. "[C]onclusory allegations and selfserving affidavits, if not supported by the record, will not preclude summary judgment." Haywood v. N. Am. Van Lines, Inc., 121 F.3d 1066, 1071 (7th Cir. 1997); see also Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1295 (7th Cir. 1993).

As the nonmoving party, Logan bears the burden of setting forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). He has not met this burden. Neither "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), nor "the mere existence of some alleged factual dispute between the parties," Anderson v. Liberty Lobby, 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986), will preclude a motion for summary judgment. When asked by the police, Caterpillar turned over the results of its internal investigation of Logan. Logan has produced no evidence suggesting that any of the Caterpillar defendants doubted the truthfulness of the report that they submitted to the police. In addition, it is clear that the police began to investigate Logan's behavior even before Caterpillar provided any information to them. Without showing specific facts that suggest the Caterpillar defendants knowingly provided false information to the police, Logan can not prove that they commenced or continued a criminal proceeding against him. Therefore, we agree with the district court's finding that Logan failed to meet the initiation element and need not address the parties' arguments on the other elements.

2. Malicious Prosecution Claims Against Watta

The district court's grant of summary judgment for Watta was based on its finding that Watta did

not com
mence or continue any criminal proceedings against Logan. Logan contends that Watta did initiate all three criminal proceedings by making false statements to the police. We agree with Logan that he has at least shown an issue of material fact as to whether Watta commenced the criminal charges filed against him. First, Watta signed a complaint against Logan arising from his early morning visit to her garage. Implicit in Watta's allegation that Logan trespassed on her property is her denial that she authorized Logan to be there. Logan contends that Watta had indeed given him permission to be there. Although the district court acknowledged that Watta signed a criminal complaint against Watta in connection with the alleged trespass to her garage, the court found that Watta had not initiated proceedings against Logan because the police placed pressure upon Watta to sign the complaint. We disagree with the district court's conclusion. Although the police may have encouraged Watta to sign the complaint, we find no evidence in the record suggesting that Watta signed the complaint against her will.

We also disagree with the district court's conclusion that Watta did not initiate the witness harassment charge. Logan claims that Watta falsely told the police that he had called her in violation of the September 3 protective order. As noted in Part B.1 above, legal causation of commencement of a criminal proceeding will be attributed to a defendant if she knowingly gave false statements to the police. See Geisberger, 379 N.E.2d at 949; Rodgers v. People's Gas, Light & Coke Co., 733 N.E.2d 835, 840 (Ill. App. Ct. 2000). Because we can not make a credibility determination on a motion for summary judgment, see Anderson, 477 U.S. at 255, Logan's denial is sufficient to create a genuine issue of material fact on the initiation element. See Sarsha v. Sears Roebuck & Co., 3 F.3d 1035, 1041 (7th Cir. 1993) (citations omitted) (holding that a nonmoving party's own affidavit containing only bare denials will constitute affirmative evidence to defeat a summary judgment motion). For the same reason, we also find that Logan has shown a genuine issue of material fact as to whether Watta commenced residential burglary charges against him with respect to the Rueschhoff break-in. Watta told the police that Logan left a message on her answering machine on the evening of July 22, 1997 admitting to breaking in to Rueschhoff's house and stealing the address book and greeting card. Logan denies this; he claims that the message simply stated that he had really "screwed up" and needed to talk to her. Thus, we find that Logan has produced enough evidence to

survive summary judgment on the commencement element for all three claims against Watta.

In deciding an appeal, however, we may rely on a ground other than the one relied on by the district court to affirm a grant of summary judgment, so long as there is adequate support in the record for the alternative basis. See Bombard v. Fort Wayne Newspapers, 92 F.3d 560, 562 (7th Cir. 1996). As we have already noted, a plaintiff can not recover for malicious prosecution unless he shows that the criminal proceeding at issue was terminated in his favor. We find that Logan has failed to establish favorable termination for either the Watta trespass action or the harassment of a witness charge. In Swick v. Liautaud, 662 N.E.2d 1238 (Ill. 1996), the Illinois Supreme Court first examined the question of whether criminal proceedings dismissed pursuant to a motion nolle prosequi constituted a favorable termination in a malicious prosecution action. Id. at 1242. In Swick, the court chose to follow the majority rule which provides that a nolle prosequi dismissal terminates a proceeding in favor of the accused "unless the abandonment is for reasons not indicative of the innocence of the accused." Id. at 1242-43 (citing Restatement (Second) of Torts sec.sec. 659, 660, 661 (1977)). The court also found that the plaintiff bears the burden of showing that the nolle prosequi was entered for reasons consistent with his innocence. See id. at 1243. This burden will only be met if the plaintiff establishes that "[t]he circumstances surrounding the abandonment of the criminal proceedings . . . compel an inference that there existed a lack of reasonable grounds to pursue the criminal prosecution." Id. (citing Wynne v. Rosen, 464 N.E.2d 1348, 1350-51 (Mass. 1984)). A nolle prosequi entered as the result of an agreement or compromise with the accused is not considered indicative of a plaintiff's innocence. See id. at 1243; Washington v. Summerville, 127 F.3d 552, 558 (7th Cir. 1997).

To determine whether the proceedings against Logan were terminated in his favor, we must look past the form or title of the disposition and examine the circumstances surrounding the entry of the nolle prosequi. See Cult Awareness Network v. Church of Scientology Int'l., 685 N.E.2d 1347, 1354 (Ill. 1997). The court's order dismissing the residential trespass action states: "Case dismissed on State's motion to nolle pros; State agrees not to prosecute Defendant for alleged violation of order of protection up to 9/10/98." At the same time, Logan entered into a more restrictive order of protection which prohibited him from entering the cities of Yorkville and Peoria without permission from the court. Watta

contends that the trespass charge was dismissed pursuant to a compromise in which the State's Attorney agreed not to prosecute Logan for the trespass and alleged violations of the order of protection in exchange for Logan voluntarily entering into a new, more restrictive protective order. Logan denies this; he argues that he agreed to the protective order in exchange only for the State's Attorney's agreement not to prosecute alleged violations of the order. Logan claims that the State's Attorney dismissed the trespass charge because she was concerned that she did not have enough evidence to convict him. He provides no evidence for this claim, however, other than his own conclusory affidavit. "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." Hadley v. County of Du Page, 715 F.2d 1238, 1243 (7th Cir. 1983). Logan's claim that the State's Attorney told him that she was dismissing the charges because she was concerned that she would not be able to obtain a conviction is hearsay, and it is thus not enough to preclude summary judgment on this issue. See Eisenstadt v. Centel Corp., 113 F.3d 738, 742 (7th Cir. 1997) ("[H]earsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial."). Therefore, we find that Logan has not produced sufficient evidence to show that the trespass charge was terminated in his favor.

We also find that Logan has not met his burden to show that the witness harassment charge was terminated in his favor. Watta argues that the harassment charge was not actually dismissed but instead was consolidated with the trespass charge. She bases her argument on the fact that the order dismissing the charge without prejudice states: "Transfer bond from 97-CF-280 [witness harassment charge] to 97-CM-590 [protective order and Watta trespass action]." Because we must construe all the facts in Logan's favor, we will not draw this inference from the dismissal order. This does not, however, relieve Logan of his burden to produce some evidence regarding the circumstances surrounding the dismissal of the charge that suggests that it was dismissed for reasons consistent with his innocence. The bare use of a nolle prosequi order does not establish that the criminal proceedings were terminated in a manner indicative of the plaintiff's innocence. See Swick, 662 N.E.2d at 1243; Washington, 127 F.3d at 558. Logan may not satisfy his burden to show that the witness harassment charge was dismissed for reasons consistent with his innocence simply by proclaiming his innocence.

Therefore, we find that Logan has not met the requirement of favorable termination with respect to the witness harassment charge.

Unlike the trespass and witness harassment claims, Logan has satisfied his burden to show favorable termination with respect to the criminal burglary. On August 24, 1998, a jury acquitted Logan of the residential burglary charges, and an acquittal is clearly sufficient to show favorable termination. Thus, we move on to the third requirement: the absence of probable cause. Here, we find that Logan has not met his burden. It is axiomatic that the existence of probable cause is a complete defense to a malicious prosecution claim. See Cervantes v. Jones, 188 F.3d 805, 810-11 (7th Cir. 1999) (citations omitted). Probable cause is defined as "'a state of facts . . . that would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged.'" Adams v. Sussman & Hertzberg, Ltd., 684 N.E.2d 935, 944 (Ill. App. Ct. 1997) (quoting Mack v. First Sec. Bank, 511 N.E.2d 714, 717 (Ill. App. Ct. 1987)). Logan argues that by disputing Watta's claim that he admitted breaking in to Rueschhoff's house, he has provided sufficient evidence to establish an issue of material fact as to whether Watta had probable cause to initiate the burglary charge. A disagreement about the relevant facts, however, does not preclude a finding of probable cause "so long as the finding survives after adopting the plaintiff's version of the disputed facts for which there is some support in the record." Cervantes, 188 F.3d at 811. Even if we accept Logan's claim that he did not admit to Watta that he committed the burglary, we find that Logan has not met his burden to show the absence of probable cause. Logan does not dispute Watta's claim that she received items in the mail that were taken from Rueschhoff's house. Nor does he dispute the fact that a letter that discouraged Watta from seeing Rueschhoff accompanied these items. These facts, coupled with Watta's knowledge of Logan's jealousy and the threatening phone calls to Rueschhoff are enough for a reasonable person in Watta's position to suspect that Logan was guilty of the Rueschhoff break-in. Therefore, we agree with the district court's determination that Logan has not presented sufficient evidence to show that Watta subjected Logan to malicious prosecution for any of the three criminal charges brought against him.

III.  Conclusion

We find that Logan has not alleged sufficient evidence to meet all of the required elements of his sex discrimination or his malicious

prosecution claims. Therefore, we AFFIRM the
decision of the district court.