SANDRA FABIANO *et al.*, Plaintiffs-Appellants, v. THE CITY OF PALOS HILLS *et al.*, Defendants-Appellees.

First District (1st Division) No. 1—00—1266

Opinion filed November 25, 2002.—Rehearing denied February 5, 2003.

Steven D. Davis and Leslie F. Notaro, both of Canel, Davis & King, of Chicago, for appellants.

Ronald F. Neville and J. Mark Lukanich, both of Neville, Pappas & Mahoney, of Chicago, for appellees.

JUSTICE COHEN delivered the opinion of the court:

Plaintiffs Sandra and Frank Fabiano brought suit against defendants, Palos Hills Police Chief Daniel L. Hurley, Palos Hills police officers Jack Roche and Steve Cardamone, and the City of Palos Hills (the City) raising an Illinois common law claim for malicious prosecution of Sandra Fabiano and a section 1983 civil rights claim (42 U.S.C. § 1983 (1994)) based on the malicious prosecution of Sandra Fabiano. Frank Fabiano sought damages for loss of consortium. The trial court granted summary judgment on all counts of the complaint in favor of all defendants.

The Fabianos appeal both from the grant of summary judgment of their claims and from the trial court's denial without prejudice of the Fabianos' motion to compel discovery of defendants' personnel files. For the following reasons, we reverse the order granting summary judgment in favor of defendants, affirm the order denying the Fabianos' discovery request, and remand to allow this matter to proceed to trial.

## BACKGROUND

In May 1987, Sandra Fabiano owned and operated Mother Goose Day Care Center (Mother Goose) and Kids Stop Day Care Center (Kids Stop). In May 1987, J.M., a three-year-old who attended Mother Goose, made a statement to her mother and later to an emergency room physician allegedly indicating that she had been sexually assaulted by Sandra Fabiano. An investigation ensued during which members of the Palos Hills police department, the Department of Children and Family Services (DCFS), and the Cook County State's Attorney's Office's Mass Molestation Task Force (the Task Force) interviewed more than 100 children attending both Mother Goose and Kids Stop over the course of 17 days. A number of children made statements to the interviewers accusing Sandra Fabiano and another

teacher of committing a variety of acts of sexual abuse. Among the children alleging abuse were: J.S., a 3½-year-old child attending Mother Goose; J.N., a 3-year-old child at Mother Goose; and B.K. a 4-year-old child attending Kids Stop. On July 31, 1987, Sandra Fabiano was indicted for the aggravated criminal sexual assaults of J.M., J.S., J.N., and B.K.

Sandra Fabiano was first tried in criminal court before a jury on the charge of assaulting J.M. The jury returned a verdict of not guilty. The State's Attorney then nol-prossed the remaining indictments. The Fabianos subsequently filed a civil complaint charging Hurley, Roche, and Cardamone with malicious prosecution under Illinois common law and with violating Sandra Fabiano's civil rights under section 1983. The City was joined as a defendant under section 9—102 of the Illinois Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/9—102 (West 1994)).

Defendants moved for summary judgment arguing that: (1) there was probable cause to commence the prosecution of Sandra Fabiano; (2) defendants did not commence the prosecution of Sandra Fabiano; (3) defendants did not act with malice; and (4) defendants are immune from liability. Following a hearing, the trial court granted summary judgment in favor of defendants, finding probable cause existed, malice was not established, and defendants did not personally commence the criminal proceedings against Sandra Fabiano. The trial court did not address defendants' claims of immunity. In light of the voluminous (29-volume) record in this case, a comprehensive recitation of the evidence and argument presented in support of and in opposition to the motion for summary judgment would be both unduly burdensome and, more importantly, unnecessary in this opinion. Instead, only relevant evidence and argument are discussed as necessary throughout our analysis.

## ANALYSIS

■ Summary judgment is proper if the pleadings, depositions and admissions on file, along with any affidavits, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 2000). The burden of proof and the initial burden of production in a motion for summary judgment lie with the movant. *Pecora v. County of Cook*, 323 Ill. App. 3d 917, 933 (2001). It is well established that in determining whether a genuine issue of material fact exists, a court must construe the pleadings, depositions, admissions and affidavits strictly against the movant and liberally in favor of the opponent. *Watkins v. Schmitt*, 172 Ill. 2d 193, 203 (1996). Because the propriety of an order granting

summary judgment is a question of law, our review of such an order is *de novo*. *Pagano v. Occidental Chemical Corp.*, 257 Ill. App. 3d 905, 909 (1994).

■ A defendant who moves for summary judgment may meet the initial burden of production either: (1) by affirmatively showing that some element of the cause of action must be resolved in defendant's favor; or (2) by demonstrating that plaintiff cannot produce evidence necessary to support the plaintiff's cause of action. *Pecora*, 323 Ill. App. 3d at 933-34. In either case, the defendant meets its burden by producing evidence that would clearly entitle the defendant to judgment as a matter of law. *Pecora*, 323 Ill. App. 3d at 934, citing *Malone v. American Cyanamid Co.*, 271 Ill. App. 3d 843, 846 (1995), and *Williams v. Covenant Medical Center*, 316 Ill. App. 3d 682, 690 (2000). " 'Only if [defendants satisfy their] initial burden of production does the burden shift to [the Fabianos] to present some factual basis that would arguably entitle [them] to a favorable judgement.' " *Pecora*, 323 Ill. App. 3d at 933, quoting *Rice v. AAA Aerostar, Inc.*, 294 Ill. App. 3d 801, 805 (1998).

■ In order to prevail on a claim of malicious prosecution under Illinois law, the plaintiff must establish: (1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) malice; and (5) damages. *Swick v. Liautaud*, 169 Ill. 2d 504, 512 (1996). All of these elements must be established; the failure to establish even one element will preclude recovery for malicious prosecution. *Washington v. Summerville*, 127 F.3d 552, 557 (7th Cir. 1997). A plaintiff alleging malicious prosecution under section 1983 must establish: (1) all of the elements of a state law cause of action; (2) a state actor committed the prosecution; and (3) the plaintiff was deprived of a constitutionally protected liberty interest. *Cervantes v. Jones*, 188 F.3d 805, 809 (7th Cir. 1999). The record reflects that the trial court made express findings as to three of the five elements of the Fabianos' malicious prosecution claim—commencement, probable cause, and malice. No issue was raised for purposes of summary judgment as to the element of favorable termination of the underlying proceedings or damages. The trial court did not address defendants' immunity arguments.

■ It is clear that this court may affirm a grant of summary judgment on any basis in the record, irrespective of whether the trial court relied on that ground or whether its reasoning was correct. *Engelland v. Clean Harbors Environmental Services, Inc.*, 319 Ill. App. 3d 1059, 1062 (2001). However, this court's exhaustive review of the record leads to the inescapable conclusion that the trial court erred in granting summary judgment in this complex and fact-intensive case.

## I. Probable Cause

■ The trial court concluded that summary judgment was proper based on the existence of probable cause. Probable cause is a state of facts that would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged. *Adams v. Sussman & Hertzberg, Ltd.*, 292 Ill. App. 3d 30, 43 (1997). The existence of probable cause is a mixed question of law and fact. *Adams*, 292 Ill. App. 3d at 43. Whether the circumstances alleged to show probable cause are true is a question of fact, but, if true, whether those circumstances amount to probable cause is a question of law to be decided by the court. *Adams*, 292 Ill. App. 3d at 43.

In order to be entitled to summary judgment based upon the existence of probable cause, defendants had the initial burden of producing evidence that would have clearly entitled them to a finding that probable cause existed as a matter of law. *Pecora*, 323 Ill. App. 3d at 933-34. In addressing the existence of probable cause, defendants rely on: (1) allegations of sexual abuse made by preschool-aged children; and (2) "medical examinations which revealed symptoms consistent with sexual abuse."

■ Where hearsay statements are urged to establish probable cause, such statements must be shown to be reliable. *People v. Tisler*, 103 Ill. 2d 226, 237-38 (1984); *Kincaid v. Ames Department Stores, Inc.*, 283 Ill. App. 3d 555, 565 (1996). A determination as to the reliability of a statement includes consideration of the veracity and basis of knowledge of the person making the statement. *People v. James*, 118 Ill. 2d 214, 223 (1987). Independent corroboration of specific details contained in the statement also serves as an indicia of the reliability of the statement. *James*, 118 Ill. 2d at 225; see also *People v. Hart*, 214 Ill. App. 3d 512, 520-21 (1991).

■ Whether a statement bears sufficient indicia of reliability to support a finding of probable cause in a malicious prosecution case is a question of fact to be resolved by the jury. *Kincaid*, 283 Ill. App. 3d at 565. "Thus, summary judgment in this case would be appropriate only if the undisputed facts allow for only one conclusion ***." *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240, 250 (1994). In considering a motion for summary judgment, the court must consider the evidence in the light most favorable to the nonmovant. *Harrison v. Hardin County Community Unit School District No. 1*, 197 Ill. 2d 466, 470 (2001).

■ Defendants, citing this court's decision in *People v. Hart*, 214 Ill. App. 3d 512 (1991), seem to suggest that a determination as to the reliability of the children's statements is somehow unnecessary. Ac-

cording to defendants, *Hart* stands for the proposition that "where a four-year-old sexual assault victim was deemed incompetent to testify, testimony that the victim had complained of being sexually assaulted to her mother and to a police officer, together with redness to the [child's] vaginal area, was *** sufficient to sustain a criminal conviction, let alone constitute probable cause." Defendants, however, cannot circumvent their evidentiary burden to establish the reliability of the children's statements by referring to "evidence amassed by another attorney in another case involving different parties" merely because that case and this involve children of similar ages. See *Hastings v. Gulledge*, 272 Ill. App. 3d 861, 867 (1995). The determination as to the reliability of a child's out-of-court statements regarding allegations of sexual abuse "must be made on a case-by-case basis." *People v. March*, 250 Ill. App. 3d 1062, 1073 (1993).

Furthermore, defendants grossly misrepresent the evidence that this court found sufficient to sustain the conviction in *Hart*.[1] In *Hart*, the trial court found the four-year-old victim incompetent to testify because, although the victim knew the difference between the truth and a lie, she did not appreciate the meaning of an oath. *Hart*, 214 Ill. App. 3d at 517. The trial court, however, permitted testimony regarding the victim's statements to her mother and to a police officer "pursuant to the excited utterance *** exception to the hearsay rule and *** section 115—10 of the Code of Criminal Procedure." 214 Ill. App. 3d at 517. The victim's mother testified that, after the victim's sister reported that the defendant had been "messing with" the victim, the victim told her mother that the defendant had pulled her pants down. 214 Ill. App. 3d at 516. Officer Mertz, who responded to a call from the victim's mother, testified that the victim (interviewed outside the presence of her mother) told Officer Mertz that the defendant had lured her into his apartment with a piece of "turtle" candy and then told her to lie on the bed. The victim told Officer Mertz that the defendant was wearing grey underwear, that he " 'put his thing in her booty' " and that " 'it hurt'." 214 Ill. App. 3d at 516.

In rejecting the defendant's challenge to the sufficiency of the evidence, the court in *Hart* did *not* rely solely on the victim's statements and evidence that medical providers noted redness to the victim's vaginal area. In addition, the court specifically noted evidence that: (1) the defendant was in fact wearing grey underwear when he

---

[1]The defendants also misrepresented the evidence in *Hart* to the trial court. In the hearing on the motion for summary judgment, defense counsel represented to the trial court that "*all* [the prosecution in *Hart*] had was a statement of a four year old and redness in the [child's] vagina." (Emphasis added.)

was arrested several hours after the victim claimed the assault had occurred; (2) "turtle" candy was in fact found at the defendant's apartment; (3) an emergency room physician who examined the victim testified that the victim's hymen was not intact, that he observed a high degree of redness to the genital area, and that the extreme redness was consistent with abuse; and (4) semen and blood were found on the bedsheets in the location on the bed where the victim had indicated that the assault had occurred. *Hart*, 214 Ill. App. 3d at 520-21. Significantly, in affirming the defendant's conviction, this court noted the trial judge's opportunity as trier of fact to "consider all the evidence that tended to establish [the] reliability" of the victim's statements. *Hart*, 14 Ill. App. 3d at 520-21.

Defendants also cite to *Easton v. City of Boulder*, 776 F.2d 1441, 1449 (10th Cir. 1985). In *Easton*, the section 1983 plaintiff challenged the validity of a warrant by suggesting that the testimony of a three-year-old and a five-year-old was "somehow suspect to begin with" in light of their age. *Easton*, 776 F.2d at 1449. The court refused to discount the children's testimony based solely on their age. *Easton*, 776 F.2d at 1449. Defendants in the instant case have conveniently failed to acknowledge that, in finding that the children's statements supported a finding of probable cause, the Tenth Circuit specifically found that the five-year-old's statement had "corroborated all the facts given by [the three-year-old] *** with respect to the assault [the five-year-old] witnessed." *Easton*, 776 F.2d at 1443. The *Easton* court further noted that details in both children's statements relative to the plaintiff's residence and the site of the assault were independently corroborated by police investigation. *Easton*, 776 F.2d at 1450. Accordingly, the children's statements in the present case must bear sufficient indicia of reliability—such as independent corroboration—to support a probable cause determination. The trial court was obligated to determine the reliability of those statements prior to ruling on the motion for summary judgment. *Kincaid*, 283 Ill. App. 3d at 565.

■ Defendants presented affidavits from Roche, Cardamone, Assistant State's Attorney (ASA) Mary Ellen Cagney and ASA Diane Romza in which each affiant averred that he or she found certain alleged victims to be competent to testify. The language in Roche's affidavit with respect to J.M. is representative:

> "During the course of the interview, affiant found that J.M. possessed the ability to receive correct impressions from her senses, to recollect those impressions, to understand questions and express answers, and to appreciate the moral duty to tell the truth."

Roche's affidavit employs identical language with respect to J.S. Cardamone's affidavit employs substantially similar language with respect

to B.K.; Romza's affidavit is substantially similar with respect to B.K., J.S., J.N., and J.C.; and Cagney's affidavit uses substantially similar language with respect to J.M., J.S., J.N., and J.C.

The affiants' beliefs that these children "appreciate[d] the moral duty to tell the truth," however, are not synonymous with a belief that these children were actually telling the truth. Furthermore, the subjective beliefs of each of these affiants regarding the veracity or cognitive capacity of each of these children is immaterial. The test for probable cause is an objective one. *Cervantes v. Jones*, 188 F.3d 805, 811 (7th Cir. 1999). None of the affidavits submitted by defendants in support of their motion for summary judgment provide specific facts known to the police prior to obtaining the indictments which would support an objective determination as to either the veracity of each child or the reliability of each child's statement.

Defendants note the number of accusations made by different children as support for a finding of probable cause. Although a number of children made allegations of similar instances of abuse, defendants presented no evidence that specific details in any given child's statement were corroborated by any other child's statement. Further, although defendants acknowledge that more than 100 children were interviewed over the course of 17 days, the record does not indicate whether the children spoke with one another during that period or whether defendants made any effort to determine whether or to what extent each child's statement was influenced by discussions with other children or adults. Significantly, with the exception of J.M., it appears that no other child complained of sexual abuse prior to questioning by defendants and the Task Force.

•█ Finally, defendants place much emphasis on "medical examinations which revealed symptoms consistent with sexual abuse." Significantly, the sole medical evidence of which defendants claimed to be aware prior to obtaining the indictments—Dr. Mueller's emergency report with respect to J.M.—does not reflect a diagnosis by Dr. Mueller that the conditions observed during her examination of J.M. were either consistent with or indicative of abuse. Defendants admitted in their answer to the complaint that they did not speak with Dr. Mueller or any other doctor prior to securing the indictment. Defendants presented no evidence that they received information regarding interpretation of the medical records from any other source.

Defendants also rely on averments made by both Cagney and Romza that, "based upon [their] experience in the criminal prosecution of child sex abusers," Cagney and Romza concluded that the conditions observed in the medical examinations of the alleged victims were consistent with the children's allegations of sexual abuse.

Supreme Court Rule 191(a) mandates that an affidavit filed in support of or in opposition to a summary judgment motion "shall not consist of conclusions but of facts admissible in evidence." 145 Ill. 2d R. 191(a). "According to Supreme Court Rule 191(a), a court must disregard conclusions in affidavits when adjudicating a summary judgment motion." *Estate of Blakely v. Federal Kemper Life Assurance Co.*, 267 Ill. App. 3d 100, 105 (1994). Pursuant to the plain language of the rule and the applicable case law, this court must disregard the conclusions of Cagney and Romza that the medical findings were consistent with the alleged abuse.

Furthermore, when addressing probable cause, the defendants' state of mind is at issue, not the actual facts of the case. *Burghardt v. Remivac*, 207 Ill. App. 3d 402, 405-06 (1991). Significantly, Romza and Cagney do not indicate in their affidavits that they communicated their medical conclusions to any of the defendants. The affidavits of Roche, Cardamone and Hurley likewise bear no indication that Romza and Cagney ever advised them as to the significance of the medical findings.

Even assuming *arguendo* that Cagney and Romza told defendants that the medical examinations were consistent with the children's allegations of abuse, such statements must also bear sufficient indicia of reliability to support a finding of probable cause (*Tisler*, 103 Ill. 2d at 237-38; *Kincaid*, 283 Ill. App. 3d at 565). Defendants presented no evidence with respect to either the type or extent of Romza and Cagney's experience in the investigation or prosecution of sexual abuse cases. No evidence was presented as to what facts Romza's and Cagney learned in the course of their experience that would enable them to determine the significance of medical findings. Likewise, neither the affidavits of Romza and Cagney nor the affidavits of the individual defendants indicate what, if anything, the individual defendants knew about the qualifications of Cagney and Romza prior to obtaining the indictments.

■ Viewing the evidence presented in support of defendants' motion for summary judgment in the light most favorable to the Fabianos—as this court is required to do (*Colvin v. Hobart* Brothers, 156 Ill. 2d 166, 170 (1993); 735 ILCS 5/2—1005(c) (West 1996))—the undisputed facts do not compel a conclusion that the allegations of abuse were corroborated by medical evidence or that any of the statements proffered to support probable cause were otherwise reliable (*Jackson Jordan*, 158 Ill. 2d at 250; *Kincaid*, 283 Ill. App. 3d at 565). Defendants have utterly failed to present competent evidentiary matter sufficient to meet defendants' initial burden (*Pecora*, 323 Ill. App. 3d at 933) of establishing that probable cause existed as a matter of law.

## II. Commencement and Malice

■ Having determined that defendants failed to meet their burden of demonstrating the existence of probable cause as a matter of law, the trial court's rulings on commencement and malice must next be reviewed. *Volpe v. IKO Industries, Ltd.*, 327 Ill. App. 3d 567, 577-78 (2002). A defendant is considered to have commenced criminal proceedings if he "initiated a criminal proceeding or his participation [was] of so active and positive a character as to amount to advice and cooperation." *Denton v. Allstate Insurance Co.*, 152 Ill. App. 3d 578, 583 (1986). Malice, as an element of malicious prosecution, is proved by showing that the prosecutor was actuated by improper motives. *Rodgers v. Peoples Gas, Light & Coke Co.*, 315 Ill. App. 3d 340, 349 (2000). Although a lack of probable cause does not itself establish malice, the trier of fact may infer malice from lack of probable cause if there is no credible evidence which refutes that inference. *Rodgers*, 315 Ill. App. 3d 349. Based on a scrupulous reading of the 29-volume record, we conclude that the trial court predicated its ruling as to the elements of commencement and malice on inadmissible evidence.

On October 22, 1999, four days before the scheduled October 26 hearing on defendants' motion for summary judgment and 53 days after the original filing date of the motion for summary judgment, plaintiffs filed an emergency motion to supplement their response to defendants' motion for summary judgment with additional evidentiary matter, including excerpts of the plaintiffs' experts' depositions, the entire transcript of the deposition of Hurley, and one page of the deposition of Cardamone. At the October 26 summary judgment hearing, after defendants presented their oral response to the emergency motion, the trial judge granted plaintiffs' motion and stated that she would give trial counsel "whatever time" was needed to address the newly submitted material. Defense counsel, however, stated that he wished to proceed with the summary judgment hearing that day.

At the hearing, counsel for both parties each challenged certain evidence offered by opposing counsel for purposes of summary judgment. Rather than conducting a separate evidentiary hearing on the admissibility of the disputed materials, the trial court chose to take the parties' evidentiary objections under advisement and rule on both their objections and the motion for summary judgment three days later, on October 29, 1999.[2]

On the 29th, the trial judge began by commenting on the hasty nature of her oral ruling, stating:

---

[2]The record reflects that trial was scheduled to begin the following week, on November 4, 1999. The beleaguered trial judge, apparently feeling pressured to rule on defendants' motion for summary judgment prior to the final

648

> "First of all, with the wait [*sic*], both physical and mental, the documents that were submitted, and I have gone through all of the two boxes that you delivered to me, Plaintiff, and the work that you have done on the briefs and everything else, I feel very inadequate ruling orally from notes.
>
> But I haven't had the time that [counsel have] had to review [these materials], and normally, I would like to issue a well thought-out memorandum opinion; but you don't have the time to wait for that."

The trial judge then ruled orally in favor of defendants. Critically, however, the transcript is devoid of any specific ruling from the trial judge on the parties' outstanding evidentiary objections. The trial judge stated only that: "*I have reviewed every document that's been submitted. I've reviewed all of the depositions that have been submitted. I have reviewed all of the attachments to the motions, the exhibits.*" (Emphasis added.) This inadequate and confusing ruling fails to clearly address the legal sufficiency of the parties' objections. The trial judge's subsequent remarks, however, lend a minimal degree of context and cement our conclusion that the trial court based its ruling on incompetent, inadmissible evidentiary matter.

■ This court has unequivocally stated:

> "Although the court at the summary judgment stage does not try the issues, evidence that would be inadmissible at trial *may not* be considered in support of or in opposition to a motion for summary judgment. *Kaplan v. Disera*, 199 Ill. App. 3d 1093, 1096, 557 N.E.2d 924 (1991). Accordingly, the trial court *must* consider and decide whether the affidavits and attachments that purport to create a genuine issue of material fact would be admissible evidentiary matter at a trial on the merits. *Harris Bank Hinsdale, N.A. v. Caliendo*, 235 Ill. App. 3d 1013, 1025, 601 N.E.2d 1330 (1992)." (Emphasis added.) *Safeway Insurance Co. v. Hister*, 304 Ill. App. 3d 687, 691 (1999).

As the record reveals, the trial judge failed to make the required evidentiary rulings in this case. We also note that although neither party filed a written motion to strike affidavits submitted by the other, the absence of such a motion does not preclude this court's *de novo* review of the sufficiency of those affidavits. *Jackson v. Graham*, 323 Ill. App. 3d 766, 774 (2001).

■ In granting summary judgment in favor of defendants on the issue of commencement, the trial court ruled that the "affidavits of

November 4, 1999, trial date and wanting to give the parties the benefit of presenting all their material to the court, felt similarly constrained to allow the last-minute filing.

the [ASAs] as to the influence or the participation—and/or the participation of the City and the defendants as a whole have not been overcome." With respect to malice, the court ruled:

"[A]ll those depositions that I was given, all of the affidavits that I was given, and even my review of the case law of grand juries and of the malicious prosecution cases, leads me to make the following finding: That there is no issue of fact, and it is a matter of law, there is no malice established in this case."

On the contrary, Supreme Court Rule 191(a) (145 Ill. 2d R. 191(a)) and the applicable case law compel the conclusion that the affidavits submitted by defendants were facially inadequate to entitle defendants to judgment as a matter of law both as to commencement and as to malice. In her affidavit, Romza denies that defendants commenced the criminal proceedings, stating:

"[The] decision to indict and prosecute Sandra Fabiano was made by [ASA] Cagney and First [ASA] Michael Agnarola. Said decision was based solely on an independent evaluation of all of the facts and evidence obtained during the investigation. The decision to indict was in no way based upon, or influenced by, any repeated advice, urging or pressure from either Roche, Cardamone or Hurley."

Romza further averred:

"[The] decision to indict and prosecute Sandra Fabiano was made without consideration of any media accounts or broadcasts pertaining to the allegations of the children or investigation of those allegations, nor was the decision to indict and prosecute Sandra Fabiano in any way influenced by Daniel Hurley's statements to the media."

Similarly, Cagney averred:

"[The] decision to indict and prosecute Sandra Fabiano was made by affiant and [First ASA] Agnarola and approved by State's Attorney [Richard] Daley. That decision was based upon an independent, good-faith evaluation of all the information obtained during the investigation [and] was in no way based upon, or influenced by, any advice, urging or pressure from [defendants]. [Defendants] neither instigated nor were instrumental in the decision to indict and prosecute Sandra Fabiano."

Cagney also parroted Romza's statement that the "decision to indict and prosecute Sandra Fabiano was made without consideration of any media accounts or broadcasts pertaining to the allegations of the children or investigation of those allegations, nor was the decision to indict and prosecute Sandra Fabiano in any way influenced by Daniel Hurley's statements to the media."

In their affidavits, Roche, Cardamone, and Hurley denied acting

with malice. Both Roche and Cardamone, using identical language, concluded: "At no time did affiant undertake any activity for the purpose of, or with the intent to, falsely, and without probable cause, prosecute Sandra Fabiano." Hurley similarly concluded: "Affiant at no time advised, urged or pressured the State's Attorney's Office to prosecute Sandra Fabiano with the knowledge there was no probable cause to believe Sandra Fabiano committed a crime." Roche, Cardamone, and Hurley each averred that he had neither falsified any evidence against Sandra Fabiano nor suppressed any evidence tending to exculpate her. Roche and Cardamone, again using identical language, denied falsely testifying before each of the grand juries: "Affiant responded truthfully to the best of his recollection to each question posed by the [ASA]. Affiant's answers were based both upon his own observations as well as the observations and statements made by others to affiant during the course of the investigation."

At the summary judgment hearing, plaintiffs' counsel objected to the contents of the affidavits. The following colloquy occurred:

"MR. DAVIS: If the State's Attorneys can file affidavits saying whatever the police did was wrong, was immaterial to what we did; or if they can say that we believe there was probable cause, and that is conclusive evidence that there was, indeed, probable cause, then the people, citizens like Sandra Fabiano, don't have any recourse.

THE COURT: Counsel, this is not—I am not the jury. The law is clear as to what is required on a motion for summary judgment. I cannot and will not put my personal feelings about this into consideration of it.

MR. DAVIS: Oh, I'm not asking for that. All I'm saying is, I don't see how I can counter that affidavit. If I got—I have to get the State's Attorney to admit that the police did something wrong."

Supreme Court Rule 191(a) states:

"Affidavits in support of and in opposition to a motion for summary judgment *** *shall* be made on the personal knowledge of the affiants; *shall* set forth with particularity the facts upon which the claim, counterclaim, or defense is based; *shall* have attached thereto sworn or certified copies of all papers upon which the affiant relies; *shall not consist of conclusions but of facts admissible in evidence*; and *shall* affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." (Emphasis added.) 145 Ill. 2d R. 191(a).

"Rule 191(a) should be construed according to the plain and ordinary meaning of its language. Its provisions should be adhered to as written." *Robidoux v. Oliphant*, 201 Ill. 2d 324, 347 (2002). "According to Supreme Court Rule 191(a), a court *must* disregard conclusions in af-

fidavits when adjudicating a summary judgment motion." (Emphasis added.) *Estate of Blakely*, 267 Ill. App. 3d at 105. See also *In re E.L.*, 152 Ill. App. 3d 25, 31 (1987) (noting the "well established principle of law that *** documents [filed in support of] summary judgment must recite facts and not mere conclusions or statements based on information and belief"); *Motz v. Central National Bank*, 119 Ill. App. 3d 601, 605 (1983) (same). Rule 191(a) also specifically limits the contents of such affidavits to statements made on the affiant's personal knowledge. 145 Ill. 2d R. 191(a); *Pyne v. Witmer*, 129 Ill. 2d 351, 364-65 (1989).

The plain language of Supreme Court Rule 191(a) clearly prohibits the type of unsupported, self-serving conclusions set forth in the affidavits of the ASAs. The basis of Cagney and Agnarola's decision to prosecute and whether defendants influenced that decision, either directly or through the media, are inadmissible as matters outside ASA Romza's personal knowledge. The trial judge should not have considered those statements in ruling on defendants' summary judgment motion. *Pyne*, 129 Ill. 2d at 364-65. Likewise, Cagney could only testify to the basis of her *own* decision to prosecute; any reference to the basis of either Agnarola or Daley's decisions was outside ASA Cagney's personal knowledge, inadmissible and thus improper for purposes of summary judgment. *Pyne*, 129 Ill. 2d at 364-65. Only Agnarola and Daley could competently testify to the basis of their decisions in this case; however, defendants failed to present affidavits from either Agnarola or Daley in support of their summary judgment motion. Absent such affidavits (or other competent evidentiary matter) defendants failed to meet their burden of establishing as a matter of law that their participation in the criminal proceedings against Sandra Fabiano was not of "so active and positive a character as to amount to advice and cooperation." *Denton*, 152 Ill. App. 3d at 583.

Similarly, defendants' conclusory affidavits do not compel a finding that they lacked malice. As noted above, a trier of fact may infer malice from lack of probable cause if there is no credible evidence which refutes that inference. *Rodgers*, 315 Ill. App. 3d at 349.

> "Where two conflicting inferences may be drawn from the evidence—one of good-faith actions on the part of the defendant and the other of *** malicious actions—the question of whether the defendant acted with malice is for the trier of fact to determine. In order to create a question for the trier of fact, it is not incumbent upon the plaintiff to present direct affirmative evidence of lack of good faith on the part of the defendant." *Frye v. O'Neill*, 166 Ill. App. 3d 963, 977 (1988).

A lack of probable cause is sufficient to permit an inference of malice by the trier of fact. *Frye*, 166 Ill. App. 3d at 978. While defendants' af-

fidavits may support an inference of good faith, the affidavits do not conclusively refute the conflicting inference that defendants acted maliciously. Under these circumstances, the existence of malice is a question of fact to be resolved by the trier of fact. *Frye*, 166 Ill. App. 3d at 977.

Under *de novo* review, this court is obligated to assess the trial court's evidentiary rulings on the admissibility of the material defendants submitted in support of summary judgment. *Estate of Blakely*, 267 Ill. App. 3d at 105. After an exhaustive review of the voluminous record in this case, we conclude—absent the inadmissible statements in the affidavits submitted by defendants—that the remaining evidentiary matter defendants submitted was insufficient to entitle them to judgment as a matter of law on the issues of commencement and malice. *Pecora v. County of Cook*, 323 Ill. App. 3d 917, 933 (2001).

■■ Defendants do not—nor could they—argue that they are entitled to summary judgment on the issue of the Fabianos' damages. Illinois courts have long held that the nature of damages is a question of fact reserved for the trier of fact. *Richardson v. Chapman*, 175 Ill. 2d 98, 113 (1997). The issue of favorable termination of the underlying proceedings is likewise not disputed and must be decided in the Fabianos' favor. The record reflects that Sandra Fabiano was found not guilty of the predicate criminal charges as to J.M. and that the remaining charges were nol-prossed as a result of that not-guilty finding. *Swick v. Liautaud*, 169 Ill. 2d 504, 512 (1996).

### III. Immunity

Although the trial court in granting summary judgment did not address defendants' claims of immunity, this court can affirm an award of summary judgment for any basis apparent in the record. *Engelland*, 319 Ill. App. 3d at 1062. Defendants raised claims of immunity in their motion for summary judgment, argued these claims at the hearing on the motion, and briefed these claims on appeal. Accordingly, we address defendants' claims of immunity here.

### A. Absolute Immunity Based on Grand Jury Testimony

■■ Defendants contend that the absolute privilege that the common law afforded to a witness's testimony at a judicial proceeding shields Cardamone and Roche from civil liability based on their grand jury testimony. The United States Supreme Court addressed this common law privilege at some length in *Briscoe v. LaHue*, 460 U.S. 325, 330-36, 75 L. Ed. 2d 96, 104-08, 103 S. Ct. 1108, 1113-16 (1983). The court held that the common law privilege applies to section 1983 civil rights cases and provides absolute immunity to testifying witnesses

(including police officers) for relevant trial testimony. *Briscoe*, 460 U.S. at 330-31, 341-46, 75 L. Ed. 2d at 104-05, 111-14, 103 S. Ct. at 1113-14, 1119-21. The privilege derives from a public policy aiming to further the truth-seeking function of litigation by permitting witnesses to testify freely without fear of subsequent civil liability. *Briscoe*, 460 U.S. at 333-34, 75 L. Ed. 2d at 106-07, 103 S. Ct. at 1114-15.

The Courts of Appeals for the Second, Sixth and Seventh Circuits have extended the holding in *Briscoe* to provide immunity from section 1983 liability for grand jury testimony. *San Filippo v. United States Trust Co. of New York*, 737 F.2d 246, 254 (2d Cir. 1984); *Macko v. Byron*, 760 F.2d 95, 97 (6th Cir. 1985); *Kincaid v. Eberle*, 712 F.2d 1023, 1024 (7th Cir. 1983). The Fifth and Tenth Circuits, however, have held that the absolute privilege does not apply to grand jury testimony. *Anthony v. Baker*, 767 F.2d 657, 663 (10th Cir. 1985); *Wheeler v. Cosden Oil & Chemical Co.*, 734 F.2d 254 (5th Cir. 1984).

Federal court decisions interpreting a federal statute are binding upon Illinois courts. *Sundance Homes, Inc. v. County of Du Page*, 195 Ill. 2d 257, 276 (2001).[3] The immunity described by the Supreme Court in *Briscoe*, however, was not derived from a federal statute. Indeed, section 1983 "on its face does not provide for *any* immunities." (Emphasis in original.) *Malley v. Briggs*, 475 U.S. 335, 342, 89 L. Ed. 2d 271, 279, 106 S. Ct. 1092, 1096-97 (1986). Rather, the immunity addressed in *Briscoe* arose under the common law and was not abrogated by section 1983. *Briscoe*, 460 U.S. at 337, 75 L. Ed. 2d at 108-09, 103 S. Ct. at 1116. "Because Federal district courts do not exercise appellate jurisdiction over State courts, the Appellate Court, First District, is not bound to follow decisions by Federal courts other than the United States Supreme Court" on questions of common law. *Prior Plumbing & Heating Co. v. Hagins*, 258 Ill. App. 3d 683, 688 (1994); *Skipper Marine Electronics, Inc. v. United Parcel Service Inc.*, 210 Ill. App. 3d 231, 239 (1991).

The United States Supreme Court has yet to directly address extension of *Briscoe* to testimony before a grand jury. Significantly, however, the Supreme Court noted in *Gerstein v. Pugh*, 420 U.S. 103, 43 L. Ed. 2d 54, 95 S. Ct. 854 (1975), that a state grand jury indictment is treated as equivalent to a magistrate's determination of prob-

---

[3]Illinois courts follow federal precedent construing federal statutes in the interest of preserving uniformity of interpretation; however, Illinois courts need not follow the Seventh Circuit's interpretation of a federal statute where the Supreme Court has not ruled on the issue, there is a split of authority among the federal circuit courts, and the Illinois court believes the Seventh Circuit case was wrongly decided. See *Weiland v. Telectronics Pacing Systems, Inc.*, 188 Ill. 2d 415, 422-23 (1999).

able cause to issue an arrest warrant. *Gerstein*, 420 U.S. at 117 n.19, 43 L. Ed. 2d at 67 n.19, 95 S. Ct. at 865 n.19. In *Malley*, the Supreme Court held that a police officer who applies for a warrant is only afforded qualified immunity—a form of immunity that we discuss later in this opinion—for representations made in the application. *Malley*, 475 U.S. at 339-46, 89 L. Ed. 2d at 277-81, 106 S. Ct. at 1095-98. Arguably, under *Gerstein*, a police officer's testimony before a grand jury is equivalent to an officer's application for a warrant. Under *Malley*, that testimony would then be afforded only qualified immunity.

Defendants argue that Cardamone and Roche are entitled to absolute immunity under the Illinois common law for their grand jury testimony. Defendants cite *Jurgensen v. Haslinger*, 295 Ill. App. 3d 139 (1998), in support of their position. In *Jurgensen*, the Third District of our appellate court held that a defendant was absolutely immune from civil liability for her testimony at a will contest trial. *Jurgensen*, 295 Ill. App. 3d at 142. Defendants cite, and our research has disclosed, no case extending the absolute privilege to grand jury testimony. The absence of cross-examination and the nonadversarial nature of grand jury proceedings increase the risk that false testimony will go undetected and militate against an extension of the absolute privilege. See *Wheeler*, 734 F.2d at 261.

■ We need not determine in this case whether the absolute privilege at common law extends to testimony before a grand jury. Even assuming *arguendo* that Cardamone's and Roche's grand jury testimony was absolutely privileged, it does not follow that Cardamone and Roche are absolutely immune from malicious prosecution liability where the Fabianos' complaint is not "grounded *solely* on the allegation that the officers gave false testimony to the grand jury." (Emphasis added.) *Treece v. Village of Naperville*, 903 F. Supp. 1251, 1258 (N.D. Ill. 1995). Rather, the Fabianos' complaint alleges, *inter alia*, that defendants pressured the State's Attorney's office to bring charges against Sandra Fabiano, concealed and/or failed to reasonably investigate potentially exculpatory evidence, and attempted to coerce a potential witness to provide false testimony against Sandra Fabiano. Cardamone's and Roche's grand jury testimony does not shield them from potential liability for these actions. Furthermore, the Fabianos' allegations that Cardamone and Roche lied to the grand jury—even if not a basis for liability—are unquestionably relevant to rebut the presumption of probable cause raised by the grand jury indictment. *Freides v. Sani-Mode Manufacturing Co.*, 33 Ill. 2d 291, 296 (1965).

Accordingly, we reject defendants' claim that Roche and Cardamone are absolutely immune from liability under the facts alleged in this case simply because they testified before grand juries.

## B. Qualified Immunity

 Defendants further argue that they enjoy qualified immunity from section 1983 liability because, even if they in fact lacked probable cause to prosecute Sandra Fabiano, they reasonably believed that they had probable cause to prosecute. Qualified immunity shields a defendant from section 1983 liability "if the defendant acted in an objectively reasonable manner." *Malley*, 475 U.S. at 341, 89 L. Ed. 2d at 278, 106 S. Ct. at 1096. Thus, defendants enjoy qualified immunity from the Fabianos' section 1983 claims if defendants reasonably believed probable cause to prosecute existed. *Mahoney v. Kesery*, 976 F.2d 1054, 1057-58 (7th Cir. 1992).

Ideally, the existence of immunity should be decided as early as possible in a litigation. *Mahoney*, 976 F.2d at 1057. "But that may not be the sensible course when, as in this case, the issue of immunity and [a] principle issue on the merits are one and the same." *Mahoney*, 976 F.2d at 1057. The defendants' contention that the "qualified immunity standard sets a lower threshold than what is required under a traditional probable cause analysis" was rejected by the Seventh Circuit in *Mahoney*. The court reasoned that "probable cause depends not on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person *in the position of the [defendant]*." (Emphasis in original.) *Mahoney*, 976 F.2d at 1057.

> "But if a *reasonable* officer would not have believed that the person had committed a crime, then the officer, whatever he did or did not believe, is acting contrary to clearly established law and therefore has no immunity. [Citations.] His subjective good faith cannot save him." (Emphasis in original.) *Mahoney*, 976 F.2d at 1058.

We find this reasoning persuasive and, accordingly, reject defendants' claim that summary judgment was proper on the basis of qualified immunity.

## C. Immunity of the City Under the Tort Immunity Act

 Defendants next argue that pursuant to section 9—102 of the Tort Immunity Act (745 ILCS 10/9—102 (West 2000)), the City is immune from *respondeat superior* liability on the Fabianos' common law claims because the individual defendants are entitled to summary judgment. Because we conclude that the individual defendants were not entitled to summary judgment, we reject this claim. Defendants also argue that a *respondeat superior* claim against the City is premature because no judgment has yet been issued as to the individual defendants. This alternative argument, not raised before the trial court, is waived. *Adams*, 292 Ill. App. 3d at 47.

## D. Section 1983 Immunity of the City

■ Defendants next argue that the City was entitled to summary judgment on the Fabianos' section 1983 claim because Hurley did not have final policymaking authority for the City. A local governmental entity is responsible for the unconstitutional actions of its employees only if those actions were taken pursuant to official policy or custom. *Eversole v. Steele*, 59 F.3d 710, 715 (7th Cir. 1995). Municipal liability under section 1983 may be imposed for a single decision by a municipal policymaker if the decision maker possesses final authority with respect to the action ordered. *Eversole*, 59 F.3d at 715. Whether a particular official has final policymaking authority is a question of law. *Eversole*, 59 F.3d at 716. "State or local law 'will always direct a court to some official or body that has the responsibility for making law or setting policy in any given area of a local government's business.' [Citations.]" *Eversole*, 59 F.3d at 716.

Defendants rely extensively on the affidavit and testimony of Palos Hills Mayor Gerald Bennett as establishing that the mayor and city council are the final policymakers for the city with respect to law enforcement and the conduct of the police department. Whether a particular official is a final policymaker, however, is a question of law to be decided by the court (*Eversole*, 59 F.3d at 716) and not a question of fact as to which the mayor's affidavit or testimony could be conclusive. Policymaking authority may be granted directly by legislative enactment or may be delegated by an official who possesses such authority. *Eversole*, 59 F.3d at 716. Accordingly, we look first to the relevant legislative enactment to determine whom the legislative body vested with policymaking authority with respect to law enforcement. We then consider whether that policymaker further delegated policymaking authority.

In determining whether a particular official is a final policymaker, three factors bear consideration: (1) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority; (2) whether the official is meaningfully constrained by policies not of that official's own making; and (3) whether the official's decisions are final, *i.e.*, are they subject to any meaningful review? *Randle v. City of Aurora*, 69 F.3d 441, 448 (10th Cir. 1995). "[A]ny review procedure or constraints must be *meaningful*—as opposed to merely hypothetical—in order to strip an official of 'final policymaking' authority." (Emphasis in original.) *Randle*, 69 F.3d at 449.

The Fabianos allege that Hurley played an active role in initiating the prosecution by making inflammatory statements to the media. Defendants argued in their motion for summary judgment that making such statements was within the scope of Hurley's official duties as

chief of police. Defendants have therefore conceded that the decision to make press statements was a matter within Hurley's authority as chief of police.

Section 2.44.020 of the Palos Hills municipal ordinance, supplied by defendants in support of their motion for summary judgment, provides that "[t]he chief of police shall be responsible for the performance of the police department, of *all* its functions and of *all* members of the division." (Emphasis added.) Palos Hills Municipal Ordinance § 2.44.020. Section 2.44.060 of that ordinance grants the chief of police authority to "make and prescribe rules and regulations for the discipline and efficient operation of the department" subject to approval by the city council. Palos Hills Municipal Ordinance § 2.44.060. The rules and regulations of the Palos Hills police department provide that the "Chief of Police will plan, organize, staff, direct, and control the personnel and resources of the Department to attain the goal to which the Department and the members are pledged."

In *Eversole*, the Seventh Circuit held that a police chief in Indiana was the final policymaker for his municipal police department where the relevant legislative enactment provided that the "police chief has exclusive control of the police department." 59 F.3d at 716. Under the Palos Hills ordinance, Hurley was responsible for the performance of "all" the functions and members of the police department. Under the rules and regulations of the department, Hurley was granted authority to "direct and control" the personnel and resources of the department. We find this authority analogous to the "exclusive control" language of the legislative enactment addressed in *Eversole*. Consistent with *Eversole*, we hold that direction of the investigation of Sandra Fabiano was a matter within Hurley's official authority.

Defendants nevertheless argue that Hurley could not have been a policymaker for the City because he was appointed and subject to dismissal by the mayor and was constrained by the policies of the City. Defendants fail to point to any specific "policy" of the City that would have constrained Hurley's decision-making authority with respect to either the conduct of the investigation or his statements to the press. At most, the rules and regulations of the police department "constrained" Hurley to enforce federal, state and local laws. We do not find this to be a meaningful constraint on Hurley's authority to direct and control the Palos Hills police department sufficient to strip him of his final policymaking authority with respect to law enforcement. Nor do we find the fact that Hurley was subject to dismissal by the mayor sufficient to strip him of policymaking authority. We are aware of no authority holding that an official must enjoy unfettered life-tenure in office to qualify as a policymaker.

Based on the foregoing, we conclude that Chief Hurley was the final policymaker for his municipal police department. Accordingly, the City was not entitled to summary judgment on this basis.

## E. Additional Claims of Immunity

■ Defendants further claim absolute privilege for Hurley's statements to the press and immunity under various provisions of the Tort Immunity Act. Each of these claims consists of a naked one- or two-sentence statement without discussion or analysis. Defendants have waived these remaining claims by failing to supply this court with adequate argument. *Avery v. State Farm Mutual Automobile Insurance Co.*, 321 Ill. App. 3d 269, 277 (2001).

## IV. Discovery

■ Finally, the Fabianos have appealed from the trial court's denial without prejudice of their motion to compel discovery of defendants' personnel files. Where a motion is denied without prejudice, "it is meant as a declaration that no rights or privileges of the party concerned are to be considered waived or lost, except in so far as may be expressly conceded or decided." Black's Law Dictionary 1179 (6th ed. 1990). We find no indication in the record that the Fabianos ever attempted to renew their motion to compel. Failure to renew the motion to compel waives any argument with respect to the trial court's ruling on that motion. *Cf. Veritone Co. v. Industrial Comm'n*, 81 Ill. 2d 97, 105 (1980) (holding that failure to renew a motion that was taken under advisement but not decided waives the right to argue the disposition of the motion on appeal).

The doctrine of waiver, however, is a limitation on the parties and not on the court. *Avery*, 321 Ill. App. 3d at 278. The parties have fully briefed this issue. Accordingly, "in the interest of thoroughly considering the issue[ ]" and because "[o]ur consideration of the merits [does] not change the outcome," we address the Fabianos' challenge to the trial court's ruling on their motion to compel. *Avery*, 321 Ill. App. 3d at 278.

Supreme Court Rule 201(b)(1) states that, "[e]xcept as provided in these rules, a party may obtain by discovery full disclosure regarding any matter relevant to the subject matter involved in the pending action." 134 Ill. 2d R. 201(b). Discovery should be denied absent sufficient evidence that the requested discovery is relevant. *Dufour v. Mobile Oil Corp.*, 301 Ill. App. 3d 156, 160 (1998). "A trial court's ruling on a motion to compel discovery will stand absent a manifest abuse of discretion *affirmatively and clearly shown by the appellant*." (Emphasis added.) *Dufour*, 301 Ill. App. 3d at 160.

The Fabianos offer no argument as to the relevance of the

undisclosed portions of the personnel files but instead suggest that the files "may" contain evidence relevant to defendants' credibility or suggesting a pattern of misconduct by the defendants. In other words, "[t]he discovery requests were merely a 'fishing expedition,' which would have been conducted with the hope of finding something relevant." *Snoddy v. Teepak, Inc.*, 198 Ill. App. 3d 966, 969 (1990). Further, the Fabianos have failed to include in the record on appeal either a transcript or bystander's report of the hearing on the motion to compel discovery. Any doubts arising from the incompleteness of the record will be resolved against the Fabianos. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984). On the record before us, we do not find any abuse of discretion in the trial court's denial of the Fabianos' discovery request.

## CONCLUSION

Based on the foregoing, we reverse the trial court's order granting summary judgment in favor of defendants and affirm the order denying the Fabianos' motion to compel discovery. We remand to allow this case to proceed to trial.

Affirmed in part and reversed in part; cause remanded.

McNULTY and TULLY, JJ., concur.