In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-3249

HERBERT WILLIAMS,

*Plaintiff-Appellant,*

*v.*

CITY OF CHICAGO, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 10 C 06234 — **Charles R. Norgle**, *Judge.*

ARGUED JUNE 5, 2013 — DECIDED OCTOBER 24, 2013

Before BAUER, EASTERBROOK, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* In the wee hours of November 18, 2009, plaintiff Herbert Williams was returning home from work. He smelled smoke, saw that his neighbor's house was on fire, and went to the porch of the burning home to bang on the door to rouse anyone who might be inside. Chicago police officers Matthew O'Brien and Joseph Byrne also spotted the smoke and found Williams on the porch. They soon arrested him on suspicion of arson. A prosecutor declined to file arson

charges later that night. Officers O'Brien and Byrne then charged Williams with criminal trespass, but that charge was quickly dismissed.

Williams brought this suit against Officers O'Brien and Byrne under 42 U.S.C. §1983 alleging false arrest in violation of his Fourth Amendment rights and against both officers and the City of Chicago under state law for malicious prosecution on the trespass charge. The district court granted the defendants' motion for summary judgment. *Williams v. City of Chicago*, 2012 WL 4434678 (N.D. Ill. Sept. 19, 2012). Williams appeals. We reverse and remand for trial. Whether there was even arguable probable cause to arrest and charge Williams depends on disputed issues of fact. Based on Williams's version of the evidence, the officers had no reasonable grounds for concluding that Williams had committed arson or trespass, or that he was anything other than a good neighbor trying to ensure his neighbors' safety.

I.   *Facts for Summary Judgment*

Because we are reviewing a grant of summary judgment, we present the facts in the light reasonably most favorable to Williams, as the non-moving party. *Good v. Univ. of Chicago Med. Ctr.*, 673 F.3d 670, 673 (7th Cir. 2012). Neither we nor the district court can resolve issues of credibility when deciding a motion for summary judgment or an appeal from its grant. *Mullin v. Temco Machinery, Inc.*, ___ F.3d ___, ___, 2013 WL 5569461, at *5–6 (7th Cir. Oct. 10, 2013). Those are issues for a jury at trial, not a court on summary judgment.

Williams came home from his job as a janitor with the United States Postal Service at approximately 2:30 a.m. on

November 18, 2009. When he exited the bus near his Chicago home, he smelled smoke. He rounded the corner and saw that the house at 11144 South Edbrooke was on fire. Concerned that there could be people inside the burning house, he began banging on the front door in an attempt to rouse them. He did not enter the burning house.

Defendant—Officers Byrne and O'Brien were in a patrol car en route to their police station when they spotted a cloud of smoke. O'Brien testified that he was one or two houses away from 11144 South Edbrooke when he first noticed the flames, which came from the rear of the house. The officers approached the house in their patrol car and saw Williams on the front porch, at the door.[1]

The officers stopped, went to the porch, and spoke with Williams. Williams explained that it was his neighbor's house, he thought people might be inside, and he was banging on the door to wake them. The officers then tried to enter the house, but the front door was locked. Officer O'Brien kicked the door open and the officers entered.

They found no one inside who needed to leave, but they observed a neatly stacked pile of firewood ablaze. They also saw burning sheets of newspaper stuffed into exposed insulation in the walls. Officer O'Brien recalled seeing a burning mattress, and he testified that the burning items were spread

---

[1] Contrary to Williams's version of events, the officers testified that they observed Williams exit the front door. In light of the conflicting testimony, the officers did not include that assertion in their Local Rule 56.1 statement of undisputed material facts. In any event, we must accept Williams's version for purposes of this appeal.

out over each of the house's three floors. Officer Byrne testified that all the burning materials were on the second floor. The officers argue on appeal that they believed the fire was likely the result of arson—Officer O'Brien explained that his arson determination was based on his training as a police officer and on "common sense." This testimony was not part of defendants' Local Rule 56.1 statement, but even if it had been, it would not affect the outcome of this appeal. So for purposes of argument, we will assume they believed the fire was arson.

When the officers left the burning house, they saw Williams in front of the house across the street, which was his own house. They approached and asked Williams for identification. Williams provided a state identification card and other cards issued by the United States Postal Service and the Veterans of Foreign Wars. Officer O'Brien then put Williams in handcuffs and the officers put him in their patrol car. Williams's mother and a neighbor both tried to intercede on his behalf. The neighbor told the officers that Williams "had nothing to do with" the fire. After the officers placed Williams in their patrol car, Officer O'Brien ran a criminal background check on Williams and found no prior arrests for arson.

The officers then drove Williams to the police station and placed him in an interrogation room. Detective Janice Govern of the Bomb and Arson section of the Chicago Police Department investigated the fire and questioned Williams. Detective Govern did not notice an unusual smell when she was questioning him. Williams repeated what he had told Officers Byrne and O'Brien: he was a janitor for the Postal Service. He never went inside 11144 South Edbrooke, but he was banging on the front door to warn anyone who might have been asleep

in the house. In other words, he was a Good Samaritan doing exactly what any concerned neighbor would do.

Detective Govern inspected the inside of the house at 11144 South Edbrooke and concluded that the home was unoccupied. She confirmed this with the owner of the house, Carl Branigan, who told Detective Govern that he and his family had recently moved out. Branigan did not say that he wanted to sign a criminal complaint against Williams.

Detective Govern finished her investigation and concluded that a chemical accelerant was not used to start the fire. Govern Dep. at 38. Detective Govern's report said nothing about whether Williams smelled of gasoline, and she testified that if Officers Byrne or O'Brien had told her that Williams had smelled of gasoline, she would have included that fact in her report. *Id*. at 29–32. The arrest report prepared by Officers O'Brien and Byrne also said nothing about Williams smelling of gasoline when they arrested him. See O'Brien Dep. at 93–96; Byrne Dep. at 62–63.[2]

---

[2] After the fact, though, both officers claimed they recalled smelling gasoline when they were in Williams's presence. O'Brien Dep. at 92; Byrne Dep. at 51. Officer O'Brien testified that he noticed the smell of gasoline while he was inside Williams's house. O'Brien Dep. at 92. Officer Byrne testified that he first smelled gasoline when he and Williams were in the patrol car. Byrne Dep. at 51. The defendants did not designate this evidence as part of their Local Rule 56.1 statement of material undisputed facts, and there is certainly room for reasonable dispute on the matter. Despite the failure to raise this evidence in the district court, the defendants included these matters in their brief on appeal. In any event, the discrepancies on these late reports of a supposedly incriminating aroma only tend to add to

(continued...)

Detective Govern provided the information gleaned from her investigation to Assistant State's Attorney Jennifer Sexton, but she did not recommend that Williams be charged with arson. ASA Sexton's notes from that conversation contain the following narrative:

> the officers observed [Williams] coming from the front door. [Williams] stopped officers to notify them of fire. Officers entered the residence to check for victims and found small piles of wood in the back room of the second floor on fire. Officers observed newspaper shoved into the walls of the residence. [Williams] was then placed into custody. Fire investigators related the fire was arson and that there were three points of origin. Building is a residence but had not been occupied for over two weeks. No injuries and no one in residence at the time of the fire. Owners of building notified.

Sexton Dep. at 10–11. ASA Sexton declined to approve an arson charge against Williams. In her deposition, she explained that her decision was likely based on a lack of information about the victim and the absence of eyewitnesses who saw Williams start the fire. Detective Govern and ASA Sexton did not discuss whether to charge Williams with criminal trespass to a residence.

Detective Govern told Officers O'Brien and Byrne that the prosecutor had rejected an arson charge against Williams.

---

[2] (...continued)
the circumstantial evidence of deception and malice, as discussed below.

Officers O'Brien and Byrne then signed a charge of criminal trespass against Williams, which occurs when a person "without authority … knowingly enters or remains within any residence … ." 720 Ill. Comp. Stat. 5/19-4(a)(1), (b)(1) (Class A misdemeanor). The evidence from the three officers conflicts in important ways as to how the charging decision was made. Officer O'Brien recalled that Detective Govern instructed him to charge Williams with criminal trespass. O'Brien Dep. at 129. His testimony, however, was contradicted by Detective Govern, who denied instructing the officers to charge Williams, and by Officer Byrne who recalled that he and Officer O'Brien jointly decided to go ahead and charge Williams. Govern Dep. at 63; Byrne Dep. at 67.

The district court's treatment of this factual issue was erroneous, and it highlights some procedural complications in this appeal. The district court wrote: "After Detective Govern told the Officers that Williams could not be charged with arson, the Officers had a conversation and decided, with Detective Govern's approval, to charge Williams with criminal trespass to residence, a Class A misdemeanor." *Williams*, 2012 WL 4434678, at *2. The defendants' motion for summary judgment and Local Rule 56.1 Statement did not present this evidence or claim the facts were undisputed. Williams's Local Rule 56.1 Statement also did not cite this evidence. The district court was not prohibited from examining all of the evidence filed on the motion for summary judgment, of course, but when its exploration of that evidence went beyond what the parties had cited, the risk of error increased.

We have often explained that district courts may not grant summary judgment on grounds not argued by the moving

party, at least not without giving notice so that the non-moving party has a full opportunity to present relevant evidence and argument. *E.g.*, *Pactiv Corp. v. Rupert*, 724 F.3d 999, 1001 (7th Cir. 2013); see generally *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) ("district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence"). This general principle applies to matters of fact as well as to matters of law. *Pactiv Corp.*, 724 F.3d at 1001, citing Fed. R. Civ. P. 56(f) (making explicit that a district court may "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute" "*after giving notice and a reasonable time to respond*") (emphasis added). It is not appropriate to grant summary judgment based on facts the moving party did not rely on, at least without giving the losing party advance notice and an opportunity to be heard.

We assume that the district court, in stating as a fact that Detective Govern had approved the criminal trespass charge, was referring to Officer O'Brien's testimony that Detective Govern instructed the officers to charge Williams. As can happen often when a court ventures beyond the parties' arguments, as it is entitled to do, the court apparently over-looked the conflicting evidence from Detective Govern. At this point, in any event, we must give plaintiff Williams the benefit of the conflicting evidence and reasonable inferences. We must assume for now that the officers filed the criminal trespass charge without any instruction, approval, or advice from Detective Govern.

When Williams was told of the charge, he told Officer O'Brien he was a "liar" for saying that he saw Williams exiting the house at 11144 South Edbrooke. Williams Dep. at 37. Officer Byrne "tried to calm [him] down" by explaining to Williams, "just calm down, you're being charged with trespassing, but if you—this will most likely get thrown out. All you have to do is show up for court." *Id*. Williams thought that Officer Byrne was playing the role of "good guy" to Officer O'Brien's "bad cop." The next month, Williams appeared in court to contest the criminal trespass to a residence charge. The court indeed dismissed the charge. This suit followed.

## II. *False Arrest*

We consider first Williams's constitutional claim, deciding whether the undisputed facts showed probable cause to arrest Williams and then whether the undisputed facts show that the officers are entitled to a defense of qualified immunity.

### A. *Probable Cause to Arrest*

To prevail on his constitutional claim for false arrest, Williams must show there was no probable cause for his arrest. See *Williams v. Rodriguez*, 509 F.3d 392, 398 (7th Cir. 2007); *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006) ("Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest[.]"). Probable cause exists if "at the time of the arrest, the facts and circumstances within the officer's knowledge … are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir.

2009), quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). "It is a fluid concept that relies on the common-sense judgment of the officers based on the totality of the circumstances." *United States v. Reed*, 443 F.3d 600, 603 (7th Cir. 2006). To make this determination, we must "step[ ] into the shoes of a reasonable person in the position of the officer[,]" *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008), considering the facts known to the officer at the time. *Carmichael v. Village of Palatine*, 605 F.3d 451, 457 (7th Cir. 2010). In deciding this question of law as part of a motion for summary judgment, however, we must give the non-moving party the benefit of conflicts in the evidence about what the officers actually knew at the time.

Based on the version of the evidence most favorable to plaintiff Williams, the defendant officers did not have probable cause to believe that he was committing or had committed a crime on November 18, 2009. When they arrived on the scene, Williams was on the porch of a burning house, banging on the door to rouse anyone inside. His presence on the porch, without more, should not have led these officers to conclude that he had committed a crime. "Clearly physical proximity to a suspected crime, without other indicia of … involvement, is insufficient to support a finding of probable cause." *United States v. Ingrao*, 897 F.2d 860, 863 (7th Cir. 1990); see also *United States v. Richards*, 719 F.3d 746, 757 (7th Cir. 2013) (noting that it is a "well-settled proposition" that "mere proximity to suspected criminal activity does not, without more, generate probable cause"); *United States v. Bohman*, 683 F.3d 861, 864 (7th Cir. 2012) ("A mere suspicion of illegal activity at a particular place is not enough to transfer that suspicion to anyone who leaves that property.") (citation omitted). The officers observed

no other circumstances that could have reasonably indicated that Williams was involved in a crime. His mere presence was not sufficient to support a finding of probable cause to arrest him for arson or criminal trespass, and on Williams's version of the evidence that's all the officers had.

The officers argue that their observations of the fire gave them a reasonable suspicion that the fire had been intentionally set, which in turn supplied probable cause to arrest Williams for arson. (As noted above, the defendants' Local Rule 56.1 Statement oddly did not assert that they believed the fire had been caused by arson, but we will assume as much for purposes of the argument.) Once they had broken down the front door, the officers observed either two or three separate fires, including a pile of wood that had been arranged in a "campfire fashion."

The problem is that regardless of what the officers reasonably believed about how the fire might have started, they did not observe anything indicating that Williams was involved. We must assume they had seen Williams only outside the burning house and outside the locked front door. Williams identified himself to the officers without hesitation or deceit as a neighbor who smelled smoke, found its source, and was on the porch to bang on the door to rouse anyone inside. The officers had no factual basis for thinking Williams was an arsonist rather than a Good Samaritan.

The defendants argue that "where a fire is intentionally set and only one person appears to have been in a position to start the fire, it is reasonable to conclude that person is responsible," but the cases they cite in support involved facts that simply are

not comparable in terms of facts indicating who was responsible for the fire. See Def. Br. at 16, citing *People v. Lawson*, 549 N.E.2d 1006, 1008 (Ill. App. 1990) (defendant's confession of arson was independently corroborated; fire was set in a maximum security cell in prison, all combustible materials in cell had been placed in one corner and set alight, and defendant was the sole occupant), and *Sherrod v. Illinois*, 50 Ill. Ct. Cl. 23, 31, 41 (Ill. Ct. Cl. 1997) (crediting arson investigator's conclusion that arson fire in a locked apartment was set by the mentally disturbed person who was the only occupant of the apartment, but concluding that state was not negligent in failing to commit that person involuntarily). In this case, Williams was present but was outside the locked and burning house. His mere presence was not enough to provide probable cause. If Williams's mere presence outside the burning house were enough to arrest someone for arson, imagine the disincentives for neighbors to help each other.

What about arresting Williams for criminal trespass? The defendants argue that "the same facts that reasonably led Officers O'Brien and Byrne to believe Williams had committed arson would also lead a reasonable person to believe he had committed criminal trespass to a residence." Def. Br. 19. We disagree. Criminal trespass requires that a person enter or remain without authority. Assuming Williams's version of the facts, the officers had no indication that he had been inside. The officers had no reasonable basis to believe Williams had committed arson, and this unreasonable belief cannot be bootstrapped into a reasonable belief that Williams had committed criminal trespass.

The district court considered the criminal trespass question as part of the malicious prosecution claim and concluded that even if the officers had not seen Williams exiting the burning house, a mistaken belief that he had "was not unreasonable under the circumstances." *Williams*, 2012 WL 4434678, at *5. This conclusion departed from the standard that governs summary judgment motions. On this point, the court gave the moving parties, not the non-moving party, the benefit of conflicts in the evidence and the choice among conflicting inferences. Based on the conflicting evidence, it would also be reasonable to conclude that Williams has been telling the truth and that the officers were lying, not just honestly mistaken, about whether they saw him coming out of the locked house.

Based on Williams's evidence, none of the circumstances of the fire supported a reasonable belief that he had committed either arson or criminal trespass. Williams has offered sufficient evidence from which a jury could conclude that Officer O'Brien and Officer Byrne arrested him without probable cause.

B. *Qualified Immunity*

The individual officers argue that they are entitled to qualified immunity on the false arrest claim because, even if probable cause was lacking, a reasonable officer could have believed there was probable cause to arrest Williams. The district court did not reach the defense. We hold that the officers are not entitled to qualified immunity on summary judgment.

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). In evaluating qualified immunity, the court asks two questions: (1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation. *Id*. at 232.

We have already answered the first question in the affirmative. The facts in this case, taken in the light most favorable to Williams, show a violation of his constitutional right to be free from arrest without probable cause. We move on to the second question, which is similar to but distinct from the first. See *Abbott v. Sangamon County*, 705 F.3d 706, 715 (7th Cir. 2013) (distinguishing question of existence of probable cause on the merits of constitutional violation from question of arguable probable cause on question of whether right was clearly established). Because this is a false arrest claim, the second question can be framed as "whether a reasonable officer could have mistakenly believed that probable cause existed." See *Fleming v. Livingston County*, 674 F.3d 874, 878 (7th Cir. 2012), quoting *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998). This concept is often called "arguable probable cause," see *Thayer v. Chiczewski*, 705 F.3d 237, 247 (7th Cir. 2012), and it is sufficient to grant qualified immunity to officers who reasonably but mistakenly believed they had probable cause to arrest. See *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

Viewing the evidence in the light most favorable to Williams, we do not find room for a reasonable mistake by the

officers about whether they had probable cause to arrest Williams. The defendants argue that the officers reasonably concluded that the fire had been set intentionally. We can assume that is true, but the argument misses the mark. The question is not whether the fire was arson but whether it was reasonable to arrest Williams for arson. On this point, the defendants have only Williams's presence on the porch. And as explained above, it is and was well established that mere presence is not enough for probable cause. When asked, Williams freely identified himself and explained he was there trying to rouse any occupants in the locked and burning home. For purposes of summary judgment, we must assume there was no indication that Williams had been inside the home, let alone that he had set the fire. Based on those factual assumptions, there was no basis for reasonable minds to differ on whether there was probable cause to arrest Williams. On this record, these officers are not entitled to summary judgment on the defense of qualified immunity.

III.   *Malicious Prosecution*

Williams has also sued both the officers and the city itself under state law for malicious prosecution based on the short-lived prosecution for criminal trespass. The elements of malicious prosecution in Illinois are (1) commencement of criminal proceedings by the defendants; (2) termination of that matter in favor of the plaintiff; (3) the absence of probable cause for the proceedings; (4) the presence of malice; and (5) resulting damages. *Gonzalez v. City of Elgin*, 578 F.3d 526, 541 (7th Cir. 2009), citing *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996). Malicious prosecution is offense—specific, so we focus our attention on the criminal trespass charge. The

defendants contend that Williams's malicious prosecution claim fails because he cannot demonstrate an absence of probable cause to charge him with criminal trespass and because he cannot show malice. We address each issue in turn.

A.  *Probable Cause to Charge*

In a malicious prosecution case, probable cause is defined as "a state of facts that would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged." *Gauger v. Hendle*, 954 N.E.2d 307, 329–30 (Ill. App. 2011) (emphasis omitted), quoting *Fabiano v. City of Palos Hills*, 784 N.E.2d 258, 266 (Ill. App. 2002). "It is the state of mind of the person commencing the prosecution that is at issue—not the actual facts of the case or the guilt or innocence of the accused." *Sang Ken Kim v. City of Chicago*, 858 N.E.2d 569, 574 (Ill. App. 2006). Errors that are not grossly negligent do not affect the probable cause inquiry when the complainant has an honest belief that the accused is probably guilty of the offense. *Id*. at 574–75.

Williams has offered evidence from which a jury could find that a reasonable person standing in the shoes of these officers could not have had "an honest and sound suspicion" that he had "entered or remained" within 11144 South Edbrooke without authority, as required to commit the crime of criminal trespass. See 720 ILCS 5/19-4(a)(1). Williams testified that when the officers arrived, he was banging on the front door of the burning residence in an attempt to rouse anyone inside. Williams did not enter the building. We credit Williams's testimony on this point for purposes of summary judgment,

and as explained above, Williams's mere presence was not sufficient to extend the officers' arguably reasonable belief that someone had entered the residence to commit arson into an "honest and sound suspicion" that the someone was Williams. Nothing about this situation suggested that Williams had committed a crime or that he had any criminal intent. He was exactly where anyone would want their neighbor to be—on the porch trying to warn any occupants of the danger in the middle of the night. A jury presented with this record could conclude that a reasonable person would not have believed that Williams had committed a criminal trespass.

B. *Malice*

The district court did not reach the question of probable cause on the malicious prosecution claim because it found that Williams had not offered sufficient evidence that the officers had acted with malice, though the two questions are closely related. We disagree with the district court's conclusion. "Malice" in the context of malicious prosecution means that the officer who initiated the prosecution had "any motive other than that of bringing a guilty party to justice." *Aleman v. Village of Hanover Park*, 662 F.3d 897, 907 (7th Cir. 2011), quoting *Carbaugh v. Peat*, 189 N.E.2d 14, 19 (Ill. App. 1963). The evidence in this record could reasonably suggest to a jury that these officers charged Williams with criminal trespass not because they believed he was guilty and wanted to bring him to justice, but for some other reason—such as perhaps covering up a bad arrest for arson. Again, taking the version of disputed facts most favorable to Williams, a jury could reasonably find that the officers concocted the trespass charge against him

without authority from either the homeowner or the case detective, and that it was unsupported by probable cause.

The officers were not required to have the approval of either the owner or the detective, of course, but a reasonable jury could find that Officer O'Brien lied about having been told by Detective Govern to file the charge. Moreover, after O'Brien told Williams that he would be charged with trespass and that he had seen Williams leaving the house (prompting Williams to call him a liar), Officer Byrne told Williams that the charge would "most likely get thrown out." On this record, Byrne's statement is not easy to reconcile with any belief the officers might have had that Williams had actually committed trespass. It certainly cannot be reconciled as a matter of law. We leave that question to the jury.

The district court stated its conclusion on this element of malice: "On these facts, the want of probable cause has not been 'clearly proved' such that the Court must infer that the Officers acted with malice." *Williams*, 2012 WL 4434678, at *5; see also *Aguirre v. City of Chicago*, 887 N.E.2d 656, 663 (Ill. App. 2008) (affirming jury verdict for plaintiffs wrongly accused and convicted of kidnapping and murder; malice may be "inferred from want of probable cause when the circumstances are inconsistent with good faith by the prosecutor and where the want of probable cause has been clearly proved"). The district court's phrasing of this conclusion effectively reversed the summary judgment standard. It is well established that a jury can infer malice from an absence of probable cause. *Aguirre*, 887 N.E.3d at 663; see also *Rodgers v. Peoples Gas, Light & Coke Co.*, 733 N.E.2d 835, 842 (Ill. App. 2000) (permitting inference of malice to be drawn from absence of probable cause); *Mack*

*v. First Security Bank of Chicago*, 511 N.E.2d 714, 717 (Ill. App. 1987) (same). To defeat summary judgment, plaintiff Williams was not required to "clearly prove" the lack of probable cause or to come forward with evidence that would *require* the court to infer malice. He was required to come forward only with evidence that would *permit* a finding of no probable cause and *permit* a reasonable inference of malice. Williams has done so. He is entitled to have a jury determine whether the officers acted with malice.

In addition, a jury hearing the discrepancies in the officers' testimony could find that the officers lied concerning several key points. The officers testified that they saw Williams exiting the house. He denies it and says they must be lying. The officers also testified that when they arrested Williams, they smelled gasoline on his person. This information, if true, would have been highly relevant to the grounds for Williams's arrest and Detective Govern's arson investigation. Yet there is no mention of a gasoline smell on Williams's person in the officers' arrest report or in Detective Govern's report. Detective Govern testified that the officers did not tell her that Williams smelled of gasoline and that she did not smell it herself when she interviewed him. The gasoline smell seems to have surfaced for the first time in the officers' depositions in this lawsuit.

The officers' testimony is also inconsistent regarding the decision to charge Williams with criminal trespass. Detective Govern was the only one who spoke with the homeowner. She testified that the owner did not state that he wished to press charges against Williams. Officer O'Brien recalled that Detective Govern instructed him to charge Williams with criminal

trespass anyway. His testimony, however, was contradicted by Detective Govern, who denied instructing the officers to charge Williams, and also by Officer Byrne, who testified that he and Officer O'Brien decided to charge Williams with criminal trespass without Detective Govern's input.

In the context of employment litigation, the law permits the trier of fact to infer an improper motive if an employer has lied about its motive for taking action against an employee, calling it "pretext." See *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 146–48 (2000) (linking rule to general principle of evidence law that factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993); *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1175 (7th Cir. 2002) ("Pretext means a lie, specifically a phony reason for some action.") (internal quotation marks omitted). This principle in employment law is drawn from the general principle of evidence law that a trier of fact is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt. *Reeves*, 530 U.S. at 147, citing *Wright v. West*, 505 U.S. 277, 296 (1992); *Reeves*, 530 U.S. at 154 (Ginsburg, J., concurring). Though the context is different, we see no reason why a parallel inference could not reasonably be drawn here. The district court erred in granting the defendants' summary judgment motion on Williams's malicious prosecution claim.

Plaintiff Williams has offered sufficient evidence from which a jury could find that the defendants are liable for an unconstitutional false arrest and for malicious prosecution under state law. The conflicting evidence presents genuine issues of material fact that could not be resolved on summary

judgment. The judgment of the district court is REVERSED and the case is REMANDED to the district court for further proceedings consistent with this opinion.